1  Javad Dadgostari
2  lolincro@msn.com
3  215 South Festival Drive
   #207
4  Anaheim Hills, CA 92808
5  714-747-3503

6  Plaintiff in Pro Per



FILED
CLERK, U.S. DISTRICT COURT

NOV 2 8 2023

CENTRAL DISTRICT OF CALIFORNIA
BY ___ DVE

IFP Submitted

7

8           UNITED STATES DISTRICT COURT
9           CENTRAL DISTRICT OF CALIFORNIA

10

11

12  Javad Dadgostari                    ) Case No 8:23-cv-02217-CJC-(JDEx)
                    Plaintiff, Pro Per  )
13                                      ) **Causes of Action:**
              v.                        )
14  Robey Azadpour;                     ) 1. Fraud;
15  Ezad (aka "Izad") Azadpour;         )
    Ladan G. Jahanpasand; AND           ) 2. Conspiracy;
16  Abolfateh (aka "Amir") Marand,      ) 3. Violation of 18 U.S.C. §371
17                                      ) 4. Deceit;
    Jointly and Severally,              )
18                   Defendants.        ) 5. Intentional Misrepresentation;
19  ─────────────────────────────────     6. Deprivation of Property
20                                           Rights;
21                                        7. Violation of 18 U.S.C. §1341
22                                        8. Intentional Infliction of
23                                           Emotional Distress;
24                                        9. Coercion.
25
26                                      **VERIFIED COMPLAINT**
27                                      DEMAND FOR JURY TRIAL
28

## I. <u>JURISDICTION</u>

1. This Court has jurisdiction under 28 U.S.C. § 1331. Federal question jurisdiction arises pursuant to 28 U.S.C. § 1331 because Defendants attempted to exploit the USCIS rules and regulations arising under the United States laws.

2. This Court has jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship and an amount in controversy greater than $75,000.

## II. <u>VENUE</u>

3. Venue is proper pursuant to 28 U.S.C. § 1391 because the events giving rise to this Complaint happened in this district.

## III. <u>PARTIES</u>

4. Plaintiff is a U.S. Citizen, and a resident of Santa Ana, County of Orange, and the State of California. Plaintiff's Internet name is Bob Dolan.

5. Plaintiff has an M.B.A. and is a Certified Translator and Interpreter for the New York State Unified Court System.

6. Defendants Robey Azadpour, Ezad Azadpour, Amir Marand, and lady Ladan G. Jahanpasand, hereinafter are referred to as "Robey"; "Ezad"; "Amir"; and "lady Ladan," respectively.

7. Plaintiff has known the family of female Defendant Robey, through Defendant Robey's brother Defendant Amir for over 40 years.

8. Plaintiff is informed and believes and on that basis alleges that female Defendant Robey is a resident of the City of Long Branch, County of Fairfax, State of Virginia.

9. Female Defendant Robey is Defendant Amir's sister.

10. Plaintiff is informed and believes and on that basis alleges that male Defendant Amir is a resident of the City of Enid, County of Garfield, State of Oklahoma and the decision-maker and the plot would not have been hatched without his approval and knowledge.

11. Plaintiff is informed and believes and on that basis alleges that male Defendant Ezad is a resident of the City of Long Branch, County of Fairfax, State of Virginia.

12. Plaintiff is informed and believes and on that basis alleges that male Defendant Ezad is a college-educated engineer and the male husband of female Defendant Robey.

13. Male Defendant Ezad has at minimum a baccalaureate.

14. Defendant lady Ladan is the cousin of female Defendant Robey's and male Defendant Amir's.

15. Defendant lady Ladan was born on September 22, 1967, is only a high-school graduate, speaks no English, has never been out of the country of Iran, and is a resident of City of Tabriz, Province of Eastern Azerbaijan, in the Country of Iran.

16. Because Defendant lady Ladan speaks no English, and thus incapable of making any decision whatsoever apropos of events, applications, forms, rules, or laws of the United States, she had to act and behave in absolute conformity with the step-by-step instructions of the three Defendants Robey, Ezad, and Amir, with Defendant Robey as the principal conduit.

17. From on or about September 2021, through on or about May 2022, Defendant lady Ladan, in her telephonic conversations with Plaintiff, on several occasions, first tacitly implied and then explicitly stated that she did not speak English and that "would not do anything without the permission of the three [the U.S.-based individuals] Defendants because she was deeply indebted to Defendants Robey and Ezad."

18. Plaintiff—on the basis of Paragraphs 15, 16, and 17, and tens of hours of telephonic conversations with lady Ladan—has come to the solid conclusion that Defendant lady Ladan, prior to taking any action or uttering any

statement of substance, made certain she did not deviate from the modus

operandi prescribed by the three U.S.-based Defendants: the D.C.B.: at the

Direction of, in Coordination with, and for the Benefit of all conspirators.

19. The facts in Paragraphs 15, 16, 17, and 18, as well as the utterances by

lady Ladan easily lend themselves to the confirmation of Defendant lady

Ladan's assertion that lady Ladan's role was that of a myrmidon, later in this

Complaint, logically inferred to have been under coercion.

20. Defendant Robey, in every conversation would defer to her husband, male

Defendant Ezad; however, Defendant Robey had total dominance over

Defendant lady Ladan in terms of advice, guidance, and following

Defendants Robey's and Ezad's instructions. (See EXHIBIT 1, Defendant

Robey's email of January 31, 2022, asking Plaintiff to send all emails to her

husband Defendant Ezad.)

21. Plaintiff is informed and believes, and on that basis alleges, that each of the

Defendants named herein as Robey, Ezad, Amir, and lady Ladan inclusive,

is responsible in some manner for the occurrence, injury, and other

damages alleged in this Complaint.

## IV. **STATEMENT OF FACTS**

22. This cause arises under the State of California laws as a criminal and civil action, arising under the Constitution, laws, and treaties of the United States.

23. Defendants Robey, Amir, and lady Ladan civilly and criminally conspired and hatched a scheme knowingly, willingly, deliberately, methodically, and under materially false and fraudulent pretenses to victimize and injure Plaintiff Javad Dadgostari (hereinafter referred to as "Plaintiff") as hereinafter described:

   1. Fraud;

   2. Conspiracy;

   3. Violation of 18 U.S.C. § 371;

   4. Deceit;

   5. Intentional Misrepresentation;

   6. Deprivation of Property Rights;

   7. Violation of 18 U.S.C. § 1341;

   8. Intentional Infliction of Emotional Distress; AND

   9. Coercion.

24. Defendants' fraudulent scheme involved defrauding the United States government and Plaintiff by conspiring to abuse Plaintiff's status as a U.S. citizen to import their cousin lady Ladan into the United States, dressed in

the livery of Plaintiff's interlocutor, fiancée, and companion, and then to dispose of Plaintiff, afterwards.

25. Owing to the complexity of the case and to ensure total compliance with the United States Citizenship and Immigration Services (USCIS) requirements, Plaintiff had to embark on research, document collection, translation work, and so forth over a span of 10 grueling, arduous months (419 MB of documents), including an exchange of 54 emails between Defendants and Plaintiff and an estimated 80 hours of telephonic (with a few FaceTimes) conversations on WhatsApp, and other electronic carriers.

26. This scam was discovered by Plaintiff on May 9, 2022, when lady Ladan emailed a bogus USCIS code to Plaintiff when Plaintiff had demanded the code of the green card lottery to check lady Ladan's status. (See EXHIBIT 2, Bogus USCIS code, with petitioner's name missing and the wrong year of birth; Defendant lady Ladan's YOB: 1967.)

27. Subsequent to the announcement of the green card lottery results on May 8, 2022, the three U.S. Defendants, who had introduced Defendant lady Ladan to Plaintiff, cut off their communications with Plaintiff, except for Defendant Amir, with whom Plaintiff had a 40-year, mostly telephonic, relationship. However, Defendant Amir, the decision-maker, would keep his

conversations uncharacteristically superficial and connive at the trumpeting, stomping elephant in the room: Why the abrupt cut-off of communication?

28. The adverse impact of the comprehensively deployed, among other things, fraud, has riven Plaintiff's thoughts and life—already in his vale of years—in such a manner that he has to relearn many of his habitual practices. As a consequence of damages inflicted on Plaintiff, as explained in Paragraphs 126 – 136. **Plaintiff alleges as follows:**

29. On or about August 15, 2021, in telephonic conversations, the two husband-and-wife Defendants (Robey and Ezad), as well as Amir, who were relatives of lady Ladan's, introduced lady Ladan, an estranged and a "no-longer femme couverte" lady, who was living in Iran, to Plaintiff, without revealing their absolute control over lady Ladan's decision-making process.

30. On or about between August 15, 2021, and September 3, 2021, in telephonic conversations, Plaintiff underscored his own chronological age to all four Defendants and insisted that they all understand that the only example of such chronological disparity is a friend of his in Arizona, with husband 25 years younger than the wife and happily married for decades.

31. On or about between August 15, 2021, and September 3, 2021, in a telephonic conversation, Defendants Robey and Ezad insisted that, despite lady Ladan's age (54), lady Ladan was "physically and psychologically

battered by her ex, and that lady Ladan was interested in a kindhearted person and does not care about Plaintiff's age (71)". (See EXHIBIT 3-A, Defendant Robey's sworn affidavit, in support of Plaintiff's "marriage"; Par. 11 re chronological disparity and Par. 13 re abuse; and EXHIBIT 3-B, for affidavit authenticating Defendant Robey's signature.)

32. On or about September 3, 2021, Since Plaintiff was actively looking for an interlocutor—strongly recommended by professionals and family members—to partially overcome the unfathomable trauma of premature and unexpected loss of his angelic wife after 44 years of marriage, Plaintiff accepted the challenge of petitioning the USCIS to bring Defendant lady Ladan to the U.S. on a humanitarian basis, as well as on the basis of Plaintiff's interlocutor, fiancée, and partner and then marry her.

33. On or about September 7, 2021, Plaintiff Javad Dadgostari commenced communicating with Lady Ladan through mostly WhatsApp messaging, WhatsApp telephone, and sometimes by email (rocrca@outlook.com and/ lolincro@msn.com).

34. At all times relevant to this complaint, Defendant Lady Ladan, in her conversations with Plaintiff, evinced an abundance of empathy for Plaintiff's loss of his angelic spouse to the degree that the bereaved, grief-stricken

Plaintiff found the colloquies cerebrally comforting and soothing, all of which caused Plaintiff to develop a sentiment more than just an affinity for her.

35. At all times relevant to this complaint, Defendant lady Ladan displayed ample abidance, with some unavoidable delays, in fulfilling the requests made by Plaintiff for almost all the needed documents, including copies of her passport and all other pieces of information demanded by the USCIS.

36. Between September 2021 and May 2022, a massive swath of over 200 pages of written communications was created, just on WhatsApp, between Plaintiff and Defendant lady Ladan on WhatsApp.

37. The 200 pages of text communications do not include 54 emails, estimated telephonic conversations of 80 hours, and numerous pages of stickers, evincing dedication and commitment by Defendant lady Ladan.

38. Between September 2021 and May 2022, inclusive, by virtue of the case being complicated (Plaintiff did not feel safe leaving the U.S.), and to ensure total compliance with USCIS requirements, Plaintiff had to collect, prepare, and study several hundred pages of documents (419 MB)—a substantial number of which required painstaking translating by Plaintiff, both written and verbal (to lady Ladan)—in preparation for filing the K–1 Fiancée Application.

39. On or about November 20, 2021, Defendant Ezad and his wife Robey sent to Plaintiff an email to present to the USCIS the supposed travails, physical and psychological abuse, and hardships suffered by Defendant lady Ladan in her life and at the hands of her ex. (See EXHIBIT 4, email composed by Defendants Robey and Ezad re abuse of Defendant lady Ladan.)

40. At all times relevant to this Complaint, despite repeated requests, Plaintiff never received any documentation in respect to the physical injuries resulting in hospital or iatric treatments of lady Ladan, but rather was accused of over-documenting or excessive caution, by Defendants Robey and Ezad

41. In fact, Defendants Robey and Ezad were critical of Plaintiff's asking for hospital records, notwithstanding their firm commitment to obtain them. Defendant Robey: "Ezad [Defendant Robey husband] has done several of these applications and none of this was ever required." (See EXHIBIT 5, email dated December 2, 2021, Defendant Robey's response in the middle Par. (bracketed), to Plaintiff's pressure to get hospital records.)

42. On or about February 17, 2022, Defendant Ezad, under false pretenses, obtained $1,500 of Plaintiff's money, through Wells Fargo Bank, and sent it to Defendant lady Ladan. (See EXHIBIT 6, Plaintiff's notarized statement by

Plaintiff's bank, $1000 and $500 (Pg. 3, in box), obtained by Defendant Ezad and sent to lady Ladan.)

43. On or about February 24, 2022, Plaintiff was angry about a personal situation and stopped communicating with lady Ladan, and other Defendants for about three days. This resulted in a flurry of anxious telephonic attempts and messages by Defendants, including Amir to find out what had gone wrong.

44. Between September 2021 and February 17, 2022, Plaintiff himself, through a friend, Hossein Parsa, had already sent $200 to Defendant lady Ladan to purchase books and supplies to learn English.  (See EXHIBIT 7, Hossein Parsa's sworn Affidavit attesting $200 given to Defendant lady Ladan for books and supplies to learn English.)

45. Plaintiff alleges upon information and belief that Defendant lady Ladan on or about May 8, 2022, appeared to have won the green card lottery because the two Defendants Robey and Ezad, the U.S. relatives who were highly attentive to Plaintiff until then, puzzlingly began to avoid Plaintiff.

46. On or about May 8, 2022, Defendant lady Ladan claimed she had not won, but then, when Plaintiff asked for the code to double-check, Defendant lady Ladan sent a bogus USCIS code with the wrong year of birth, and with the name missing. (See EXHIBIT 2, bogus USCIS code.).

47. On or about May 25, 2022, Defendant lady Ladan, in a telephonic conversation said, "I do not want to write this; I want to say it orally; I did not win the green card lottery," of which the term "say it orally" unmistakably was demonstrative of the instructions she had received from the other conspirators, for, as a high-school graduate, she would not have the know-how to calculate its legal ramifications.

48. Plaintiff alleges upon information and belief that Defendants Robey and Ezad ceased their communications with Plaintiff upon lady Ladan's winning the green card lottery because they no longer needed Plaintiff. (Defendant Amir called a few times to talk about non-lady Ladan topics. Plaintiff's telephonic relationship with Amir has a history of approximately 40 years.)

49. On or about May 9, 2022, Plaintiff asked Defendant Robey, the female cousin of Defendant lady Ladan on WhatsApp messaging: "Did lady Ladan win the green card lottery?" Defendant Robey scornfully, sarcastically, and inexplicably refused to answer: [verbatim quote]: "Salam, Mr Javad, I am sorry but i didn't apply for her lottery. Please ask her directly."

50. May 9, 2022, when Plaintiff thanked Defendant Robey for her answer, Defendant Robey's response was the following:



51. May 9, 2022, Defendant Robey's eye-poppingly absurd statement in
Paragraph 49, followed by the sarcastic response in Paragraph 50, makes
suspension of disbelief impossible. Pretending that she has no knowledge
of lady Ladan's life-changing event is the bathos of duplicity when, by
Defendant Robey's own admission, in Paragraph 7 of her affidavit she
states, "am in touch with her [lady Ladan] almost on a daily basis." (See
EXHIBIT 3-A, Defendant Robey's sworn affidavit, Par. 7, re being in touch,
addressed to the U.S. government.)

52. Defendant Robey's intentionally alienating reaction was bewilderingly
startling, considering that the relationship between Defendants and Plaintiff
had been totally amicable until then, not to mention Defendant Robey's
sworn affidavit stating, in Paragraph 7 that she is in contact with Defendant
lady Ladan, her cousin "almost on a daily basis." There was no justification,
no reason, or any action on Plaintiff's part for Defendant Robey to be
sarcastic or to cut off her relationship with Plaintiff, except for the green card
lottery results announcement on May 8, 2022. (See EXHIBIT 3-A,
Defendant Robey's affidavit, Par. 7, re daily contact.)

53. One would think that if Plaintiff had done anything wrong, they would gladly offer that as the reason for their avoiding Plaintiff. There was never any communication electronic or otherwise by any of the parties, including particularly lady Ladan, demonstrative of any event to justify their abrupt cutting off all communication with Plaintiff, which exposed their corrupt intent: to use Plaintiff's status to import their cousin and then disembarrass themselves of Plaintiff.

54. From on or about May 9, 2022, through on or about June 6, 2022, lady Ladan took several oaths, begged and beseeched Plaintiff to reconsider his position of severing communications with her, and that he is wrong and that she is deeply, really interested in Plaintiff. (See EXHIBIT 8, pages 1 – 9 of lady Ladan's unwavering conviction and implorations and supplications, with intense expressions of affection, without a single word of rejecting Plaintiff.)

55. A snippet of sample WhatsApp excerpts from tens of typical, passionate Lady Ladan messages and stickers:

56. [5:02 PM, 1/3/2022] +98 914 419 4854: به،من اگه میام با شما زندگی جدیدی شروع کنم،به خاطر این نیست که خودمو به امریکا برسونم،نه من چون به خودتونم علاقه دارم،بخاطر اون الان برای دیدنتون از نزدیک لحظه شماری میکنم.

57. **Translation**: [5:02 PM, 1/3/2022] +98 914 419 4854: If I am coming to start a new life with you, the purpose is not for me to come to the United States, [oh] no; it is because I am interested in you and I am counting the minutes to see you in person.

58. [9:20 AM, 1/4/2022] +98 914 419 4854: ....  من یه،سن برای من اصلا ملاک نیست،من یه فردی رو میخوام که منو بتونه خوشبخت کنه،ومن مطمئنم اون فرد شمائین،سن به نظر من یه عدده

59. **Translation**: [9:20 AM, 1/4/2022] +98 914 419 4854: [One's] age is not a criterion for me, at all. I want someone who can make me happy, and I am sure that person is you. The age, in my opinion, is just a number.

60. [11:46 PM, 4/22/2022] +98 914 419 4854 .....جواد جان عزیزم،عمر من،نفس من،عشق من

61. **Translation**: [11:46 PM, 4/22/2022] +98 914 419 4854: Dear Javad, my dear, my life, my breath, my love …

62. **Translation** from a sticker: I circumambulate you.

[The analogy is to Muslims' worshiping the Kaaba, by walking around it seven times. The Islamic shrine in Mecca incorporates a baetyl and is the goal of Islamic pilgrimage and the point toward which all Muslims turn in praying and absolute submission.]

63. Plaintiff alleges upon information and belief, based on facts in Paragraphs 15 - 18 and  Paragraphs 54 through 62, and based on approximately nine

pages of implorations and supplications by lady Ladan in EXHIBIT 8—that

contains not a single word of rejecting Plaintiff—that Defendant lady Ladan,

over the 10 months, had developed a deep devotion and attachment to

Plaintiff and was probably given and then coerced into sending the bogus

code to Plaintiff by the three Defendants Amir, Robey, and Ezad.

64. On or about May 8, 2022, Subsequent to the USCIS lottery results

announcement, Defendants Robey and Ezad established a total radio

silence in their relationship with Plaintiff.

65. On or about May 26, 2022, Plaintiff told Defendant lady Ladan on the

phone: "We have nothing to talk about until I receive the real code."

66. Subsequent to receiving the bogus USCIS code (See EXHIBIT 2, the

bogus code.), it was Plaintiff's wrenchingly painful decision to terminate all

communication with lady Ladan on moral and legal grounds—

notwithstanding the repeated written, sincere assertions by lady Ladan that

she was wholeheartedly interested in Plaintiff. (See EXHIBIT 8, pages 1 – 9

of lady Ladan's unwavering conviction and implorations and supplications,

with intense expressions of affection for Plaintiff.)

## ADDITIONAL FACTUAL ALLEGATIONS

67. At all times relevant to this Complaint, Defendants were acting within the course and scope of their agency, with the full knowledge, consent, permission, authorization, and ratification, either express or implied, of the other Defendants in performing the acts alleged in this Complaint.

68. At all times relevant to this Complaint, Plaintiff alleges upon information and belief that Defendant Lady Ladan was being meticulously and thoroughly instructed, advised, guided, directed, and coerced by female Defendant Robey, the principal Conduit of Instructions issued by Defendants Ezad and Amir as to what to do and how to behave toward Plaintiff.

69. In committing the wrongful acts alleged herein, each of Defendants pursued, or joined in the pursuit of, a common course of conduct, and has acted in concert and/or conspired with others in furtherance of the unlawful acts and transactions that are the subject of this Complaint.

70. Plaintiff alleges upon information and belief that Defendant Lady Ladan shared and continues to share every thought and step with the three conspirators Robey, Ezad, and Amir and that Defendant lady Ladan is not capable of making independent decisions apropos of events in the U.S. Thus, Defendant lady Ladan unswervingly and unquestionably follows their instructions like a myrmidon.

71. On or about January 15, 2022, Defendant Robey suggested to Plaintiff that estranged Defendant lady Ladan finalize her divorce.

72. On or about February 5, 2022, when Defendants had incorrectly perceived Plaintiff might be feeling lukewarm about the affair, Defendant Amir Visited Plaintiff for a week, staying in Plaintiff's apartment, in order to offer assurances and to solidify the scam; Defendant Amir on the last day: "You're going to be our relative."

73. During his sojourn, in Paragraph 72, Defendant Amir, spent about $350 on dining out with Plaintiff, without allowing Plaintiff to spend any money.

74. On or about February 5, 2022, Plaintiff rented a car from Enterprise for Defendant Amir because he had forgotten to bring his credit cards. Plaintiff has not driven a car for over 25 years. (See EXHIBIT 9, Enterprise car rental contract, with Abolfateh (Amir) Marand's name in brackets.)

75. On or about February 8, 2022, Plaintiff broached, in person, in Plaintiff's apartment, Plaintiff's educational project (Roc Research Business Plan) and mentioned that Plaintiff was looking for an investor and a grubstake and that "this has a billion-dollar potential," with an investment of about $1.5 million and asked Defendant Amir whether he has the capital to launch the project. Defendant Amir's response was a vague amount that he said was insufficient. (See EXHIBIT 10, Roc Research Business Plan Outline.)

76. On or about January 31, 2022, Plaintiff rejected a female suitor from England, stating to the female suitor that Plaintiff has already committed himself to a lady in Iran and cannot renege on his word. (See EXHIBIT 11, Plaintiff's email rejecting the female suitor from England.)

77. March 29, 2022, Defendant Robey, with unabated brass, signed and mailed by the U.S.P.S. a sworn affidavit, under pain of perjury, knowingly and of her own volition, addressed to the USCIS, in support of "marriage" between Plaintiff Javad Dadgostari and Robey's cousin, Defendant Lady Ladan. (See EXHIBIT 3-A, Defendant Robey's sworn affidavit in support of Plaintiff's "marriage," addressed to the U.S. government.)

78. April 13, 2022, Defendant Amir, with impudent assurance, signed and mailed by the U.S.P.S. an affidavit, knowingly and of his own volition, addressed to the USCIS, in support of "marriage" between Plaintiff and Amir's cousin, Defendant Lady Ladan. (See EXHIBIT 12, Defendant Amir's notarized statement, in support of Plaintiff's "marriage," addressed to the U.S. government; and EXHIBIT 3-B, Affidavit authenticating Defendant Amir's signature.)

79. At all times relevant to this Complaint, Defendants Robey and Ezad and Amir treated Plaintiff Javad Dadgostari gingerly and with respect until on or

about May 8, 2022, when the USCIS announced the results of the green card lottery.

80. On or about July 21, 2022,  Plaintiff, in a lengthy telephonic conversation, stated, among other things, to Defendant Amir that Plaintiff understood the fraudulent, sham contrivance by Defendants, but failed to understand the thievery, and that both of which are actionable: the fraud, as well as the theft of $1,500 plus $200 (through Hossein Parsa). (See EXHIBIT 7, Hossein Parsa's sworn Affidavit attesting $200 given to Defendant lady Ladan for books and supplies to learn English.)

81. On or about August 1, 2022, Defendant Amir sent a check to Plaintiff for $1,700 (See EXHIBIT 13, $1,700 check, issued by Defendant Amir, to return Plaintiff's money.)

82. Between August 10 and September 27, 2022, out of respect for the 40-year relationship, Plaintiff repeatedly invited Defendant Amir on the phone to come and see the magnitude and enormity of the work that have been done in preparation for the submittal of the K-1 Fiancée visa application, which had been ready to be filed.

83. In response to the earnest pleas in Paragraph 82, Defendant Amir mysteriously, puzzlingly, and repeatedly asked Plaintiff to just "forget about Ladan" and "just let it go," without explaining why and what had gone wrong.

84. Out of respect for the 40-year relationship, Plaintiff continued to tell Defendant Amir that Plaintiff has tens of questions regarding Defendants Robey and Ezad going silent and eluding Plaintiff, and that there is no one to answer Plaintiff's questions. Defendant Amir's reaction was the same or going awkwardly silent or changing the subject.

85. On September 27, 2022, Plaintiff felt compelled to file a Complaint against Defendants Robey, Ezad, and Lady Ladan with the Superior Court of California of Orange County (Case # 30-2022-01282204).

86. In the September 27-2022 Complaint (Par. 85), Plaintiff had deliberately left out Defendant Amir's name from the lawsuit by virtue of Plaintiff and Defendant Amir's 40-year relationship, as well as hoping that Defendant Amir would enlighten the puzzled Plaintiff as to the events that had taken place and answer numerous serious questions Plaintiff had.

87. From on or about November 27, 2022, through on or about January 7, 2023, Plaintiff had several conversations with Defendant Amir, asking Defendant Amir to come to California to see, in person, the voluminous work that has been done and answer some grave questions amid all the teetering, weltering emotions experienced by Plaintiff, who had to seek professional, psychological help.

88. From on or about November 27, 2022, through on or about January 7, 2023, Defendant Amir neither came nor offered any explanation; nor did Defendants Robey and Ezad.

89. At no time since May 8, 2022, has any of the three Defendants asked, "Why did you terminate your relationship with lady Ladan?" When they were the ones who had introduced her to Plaintiff. They have not uttered a single word about the trumpeting, stomping elephant, either: the bogus USCIS code.

90. On or about January 11, 2023, Plaintiff, failing to elicit any illuminating answers from Defendant Amir to the morass in which Defendants had mired Plaintiff with sophistry and subterfuge, Plaintiff filed an Amended Complaint (Par. 85), adding Amir's name to the Complaint as Defendant.

91. On or about February 6, 2023, Defendant Amir, in a telephonic conversation, in a panic, asked Plaintiff to withdraw the Complaint, against Defendants Robey and Ezad (Defendant Amir had not been served the complaint yet), without condemning the lawsuit or even attempting to torture out some explanation or reason of any nature for the demand, except a question: "In whose name is the [USCIS] code?" [Referring to the bogus code]. Plaintiff responded: I cannot tell you.

92. On or about February 8, 2023, again, out of respect for the 40-year relationship, Plaintiff continued asking Defendant Amir to come to California to examine the prodigious quantum of work Plaintiff had done and answer Plaintiff's questions. Defendant Amir's continued reaction was "go and dismiss the case," strangely, again, with no explanation or justification for the demand. It was a fiat sine a premise.

93. On or about February 8, 2023, Plaintiff told Defendant Amir. "I have rejected a woman in England in February of 2022 because I told her I had already committed myself to lady Ladan. She was ready to sell her house and join me here. What am I supposed to do now at my age? Defendant Amir's answer: "I'm sure she is still available. Call her." (See EXHIBIT 11, Plaintiff's email rejecting the female suitor from England.)

94. On or about November 10, 2020, Plaintiff recalls calling Defendant Amir from New York to share with him the unexpected, premature demise of Plaintiff's spouse Kathryn on November 4, 2020. Defendant Amir's eldritch reaction was ineffable: He embarked on a grotesquery of feigned, loud, lachrymose yowling that sounded, at times, like blatting that continued intermittently for about 2 – 3 minutes. Plaintiff was baffled but too grief stricken, at the time, and dismissed the incident as puerile and pathetic.

95. Plaintiff remembered the event in Paragraph 94 only recently. Plaintiff, in the course of the 40-year relationship, was never aware of Defendant Amir's deeply entrenched, subterranean jealousies and envies of Plaintiff in Paragraph 94 to the extent that the quietus of Plaintiff's spouse would induce crackling schadenfreude.

96. Plaintiff alleges upon information and belief that, over the years, Defendant Amir has had several physical altercations with his spouse (a college freshman dropout) over her habitual, excessive drinking and smoking, among other things.

97.  Over the telephonic conversations and through personal visits, over the 40 years, Defendant Amir has been fully cognizant of the personal practices of Plaintiff's phlegmatic late spouse Kathryn (had an MBA, never drank or smoked), who had made it known, through Plaintiff, to Amir that she resented the $700 interest Amir had charged Plaintiff on a $1500 loan when Plaintiff, under the exact, but reverse, situation had loaned the same to Amir interest free (Amir returned the $700 after 25 years).

98. Plaintiff alleges upon information and belief that the body of facts described in Paragraphs 94 through 97 constitutes implied malice and was, in part, responsible for the deployment of the fraud perpetrated on Plaintiff.

99. On or about February 8, 2023, Defendant Amir, in a telephonic conversation, made, among other assertions, the following statement: "Go and withdraw the case or else," to which Plaintiff responded: "Are you making a threat?" Defendant Amir responded: "No, but I intend to spend serious money."

100. On or about February 8, 2023, Plaintiff called back and told Defendant Amir that Plaintiff did not want to file the case (Par. 85) in the federal court because that might have some dire consequences for him and others. His response: "Go and do whatever you want to and can."

101. Subsequent to the ruling by the Superior Court to quash the summons for inconvenient forum, and thus render jurisdiction moot, Plaintiff dismissed the case without prejudice on May 5, 2023.

102. As a consequence of the insidiously damaging subreption, among other things, Plaintiff has suffered an array of psychological, physical, and social injuries as hereinafter described in the causes of action.

## V. CAUSES OF ACTION

Plaintiff respectfully requests that the Court take under advisement Plaintiff's "alleges upon information and belief ..." statements as assertions that will almost all be reified and substantiated through discovery.

## FIRST CAUSE OF ACTION
### Fraud (Against All Defendants)

103. *Defendant's knowledge or recklessness as to the falsity of the representation. Defendant must either know that the representation is false, or they must have been reckless in making it. This means that they must have been aware that there was a high probability that the representation was false, but they went ahead and made it anyway.*

104. *The intent to deceive. Defendant must have intended to deceive the victim into relying on the false representation.*

105. *The victim's reliance on the false representation. The victim must have actually relied on the false representation in making a decision.*

106. *The victim's injury. The victim must have suffered some type of injury as a result of relying on the false representation.*

107. Plaintiff re-alleges and incorporates by reference into this cause of action all allegations set forth in this Complaint as though fully set forth herein.

108. **Knowledge and Intent** — Over a period of 10 months, Defendants were fully aware of the fraudulent scheme they had hatched as demonstrated by their intentional, scornful avoidance of Plaintiff, subsequent to the USCIS lottery results announcement of May 8, 2022, and by cutting off all

communication with Plaintiff, that is, telephonic, email, and WhatsApp text communications without offering a single shred of explanation as to why. Further, as stated in Paragraph 91, Defendant Amir knew about the bogus USCIS code and asked Plaintiff, "In whose name is the USCIS code?" Plaintiff answered, "I cannot tell you."

109. **Knowledge and Intent** —Defendants' termination of communications with Plaintiff, subsequent to the USCIS lottery results announcement, is of particular significance by virtue of the stark contrast with when Plaintiff cut off his communications, for personal reasons, only for three days, on February 24, 2022, as explained in Paragraph 43 when everything was going according to the "plan."

110. **Knowledge and Intent** — On or about May 8, 2022, Defendant lady Ladan could not have sent the bogus USCIS code (EXHIBIT 2) to Plaintiff without the approval and consent of the three Defendants Robey, Ezad, and Amir because lady Ladan in Paragraph 17 stated, "would not do anything without the permission of the three [the U.S.-based individuals] because she was deeply indebted to Defendants Robey and Ezad."

111. **Knowledge and Intent** — The deliberate misrepresentation and chicane were intended to euchre Plaintiff into a fraudulent plan because

Defendants considered the likelihood of winning the green card lottery highly remote.

112. **Knowledge and Intent** — The overt and predicate acts in Paragraphs *supra* are demonstrative of Defendants' intent to deploy a plot whose aim was to defraud both the United States and Plaintiff by using Plaintiff as their nefarious tool. Defendants achieved this with two affidavits, 54 emails, an estimated 80 hours of phone calls, the bogus code, in-person assurances ("You're going to be our relative."), their barefaced acquisition of Plaintiff's wherewithal ($1700), repeated inexplicable requests by a Amir "let it go"; forget about  Ladan; call the one in England; I'm sure she's still available"; and, as the finale, terminating their relationship and communications with Plaintiff.

113. **Knowledge and Intent** — Defendant Amir by sending, to Plaintiff,  a check for $1,700, subsequent to Plaintiff's calling both the actions and the money taken illegal, is demonstrative of Defendant Amir's and others' knowledge, intent, and deep, to-the-core involvement. The check was a prophylactic attempt at Plaintiff's seeking judicial relief, as explained in Paragraphs 80 and 81.

114. **Knowledge and Intent** — Plaintiff alleges upon information and belief that the body of facts described in Paragraphs 94 through 97 constitutes

implied malice and was, in part, responsible for the deployment of the fraud perpetrated on Plaintiff by Defendant Amir.

115. **Knowledge and Intent** — College-educated Ezad and Amir knew and understood that both their purpose and their methods of achieving this purpose were unlawful and would result in injury to Plaintiff and agreed and understood that each would act in concert with the others to achieve this pernicious purpose.

116. **Defendants' Intent and Plaintiff's Reliance** — On or about November 20, 2021, Defendant Ezad and his wife Robey sent to Plaintiff an email to present to the USCIS the supposed travails, physical and psychological abuse, and hardships suffered by Defendant Lady Ladan in her life and at the hands of her husband. The email evoked Plaintiff's empathy and compassion, as well as urging Plaintiff to do his utmost to bring this to fruition. (See EXHIBIT 4, Email composed by Defendants Robey and Ezad, re physical and psychological abuse of lady Ladan.)

117. **Defendants' Intent and Plaintiff's Reliance** — On or about February 5, 2022, Defendant Amir visited Plaintiff for a week, staying in Plaintiff's apartment, in order to offer assurances and to solidify the scam. Defendant Amir, with a wry smile, on the last day: "You're going to be our relative." Plaintiff rented a car for him because Defendant Amir had left his

credit cards in Oklahoma. (See EXHIBIT 9, Enterprise car rental contract, with Abolfateh (Amir) Marand's name in brackets.)

118. **Defendants' Intent and Plaintiff's Reliance** — On or about February 17, 2022, Defendant Ezad willingly, under false pretenses, obtained $1,500 of Plaintiff's money, through Wells Fargo Bank, and transferred it to Defendant lady Ladan's account in Iran. The money issue firmly established in Plaintiff's mind the "bona fide" intention of Defendants. (See EXHIBIT 6, Plaintiff's notarized statement by the bank, $1000 and $500 (Pg. 3, in box), obtained by Defendant Ezad and sent to lady Ladan.)

119. **Reliance** — Between September 2021 and May 2022, Plaintiff's reliance on Defendants actions resulted in a case that was complicated (Plaintiff did not feel safe leaving the U.S.). To ensure total compliance with USCIS requirements, Plaintiff had to collect, cull, study, and analyze several hundred pages of documents—a substantial number of which required painstaking translating by Plaintiff, both written and verbal (to lady Ladan)—in preparation for filing the K–1 Fiancée Application.

120. **Reliance** — March 29, 2022, Defendant Robey, with unabated brass, signed a sworn affidavit, under pain of perjury, knowingly and of her own volition, addressed to the USCIS, in support of "marriage" between Plaintiff Javad Dadgostari and Robey's cousin, Defendant lady Ladan, and

thus assurances that everything is indisputably honest. (See EXHIBIT 3-A, Defendant Robey's sworn affidavit, in support of Plaintiff's "marriage," addressed to the U.S. government.)

121. Defendant Robey's Affidavit (EXHIBIT 3-A) contains materially false assertions in Paragraphs 9, 10, 11, 13, 14, and 15 (numbers, not text, 13, 14 and 15 were handwritten by Plaintiff).

122. **Reliance** — April 13, 2022, , Defendant Amir, with impudent assurance, signed an affidavit,  knowingly and of his own volition, addressed to the USCIS, in support of "marriage" between Plaintiff Javad Dadgostari and Amir's cousin, Defendant lady Ladan. (See EXHIBIT 12, Defendant Amir's notarized statement, in support of Plaintiff's "marriage," addressed to the U.S. government; and EXHIBIT 3-B, Affidavit authenticating Defendant Amir's signature.)

123. Defendant Amir's Affidavit (EXHIBIT 12)  contains materially false assertions in Paragraphs 9, 11, and 14 (numbers, not text, 13 and 14 were handwritten by Plaintiff).

124. **Reliance** — Plaintiff relied on the plan and acted on it—as demonstrated by virtue of Plaintiff's words and actions—by spending hundreds of hours (419 MB), over a span of 10 months, to finalize what Plaintiff believed to be an honest interaction and a bona fide, humanitarian endeavor.

125. **Reliance and Injury** — On or about January 31, 2022, Plaintiff, relying on Defendants' honesty, rejected a female suitor from England, who was willing to sell her house and join Plaintiff, stating to her that Plaintiff has already committed himself to a lady in Iran and cannot renege on his word. (See EXHIBIT 11, Plaintiff's email rejecting the female suitor from England.)

126. **Injury** — Plaintiff had several sessions of psychiatric counseling until he could no longer afford it. Some of the symptoms include screams of ire, uncharacteristic foul language, frequent flashbacks (20 – 30 times/day) causing disruptions of concentration and of sleep pattern, obtrusive thoughts, particularly during meals, and so forth.

127. **Injury** — Sleep-pattern disruptions have been particularly detrimental to Plaintiff owing to Plaintiff's diabetes, and thus enervating his ability to exercise, which causes uncontrollable blood sugar spikes, damaging, among several other organs, the kidneys.

128. **Injury** — On or about March 10, 2023, to control the uncontrollable blood sugar spikes, caused by sleep-pattern disruptions and heightened stress levels, Plaintiff began insulin treatment for diabetes.

129. **Injury** — The actions of Defendants were oppressive, fraudulent, and malicious, perpetrated by taking advantage of Plaintiff's trust in them, with

total disregard for Plaintiff's psychological and physical health, and thus injuring Plaintiff, as such.

130. **Injury** — Defendants Amir and Robey betrayed and exploited their forty-year relationship that existed between Plaintiff and Defendant Amir.

131. **Injury** — Plaintiff's jarring shock and dismay upon the discovery of the scam in the weeks following the May 8, 2022, USCIS green card lottery results announcement, were of such a degree that Plaintiff found himself in a state of incomprehensible mental paralysis.

132. **Injury** — Plaintiff, subsequently, for weeks, was refusing to admit to himself that the development was not fraudulent and perhaps something was awry somewhere that will right itself.

133. **Injury** — Defendants' actions were so outrageous that Plaintiff has suffered, among other things, humiliation, mental anguish, physical pain, sleep-pattern disruptions, social withdrawal, thoughts of suicide, despondence, depression and distress, impacting every quotidian task Plaintiff performs. Plaintiff still continues to hear "I told you so," in tenor and tone, from the people in his orbit.

134. **Injury** — Additionally, Plaintiff has unwittingly developed, among other things, uncontrollable soliloquy, a completely uncharacteristic and

unprecedented fescennine language directed at Defendants, and sometimes even at nonentities, when alone.

135. **Injury** — Plaintiff is so startled by the epiphany of being methodically lied to for such an extended period of time that Plaintiff has unwittingly developed a lack of trust and a new practice of suspecting individuals, apropos of even the authenticity of the syntactical definite and indefinite articles in their speech.

136. **Injury** — Plaintiff has received several counseling sessions of psychological therapy and would seek additional therapy were it not for the lack of wherewithal.

---

**SECOND CAUSE OF ACTION**
**Conspiracy (Against All Defendants)**

---

137. ***Two or more persons****. There must be at least two people who agree to commit a crime.*

138. ***An agreement****. The agreement must be to commit a crime. It does not have to be a written agreement, but it must be clear that the parties intended to commit a crime together.*

139. **Intent.** *The parties must have intended to commit the crime. This means that they must have known that the agreement was to commit a crime and that they intended to carry out the agreement.*

140. **Overt Act.** *At least one of the parties must have taken an overt act in furtherance of the conspiracy. An overt act is any act that is done in furtherance of the conspiracy, even if it is not a crime in itself.*

141. Plaintiff re-alleges and incorporates by reference into this cause of action all allegations set forth in this Complaint as though fully set forth herein.

142. **Two or more persons and Agreement** — On or about August 15, 2021, in telephonic conversations, the two husband-and-wife Defendants (Robey and Ezad), as well as Amir, who were cousins of lady Ladan's, introduced lady Ladan, an estranged and a "no-longer femme couverte" lady, who was living in Iran, to Plaintiff, without revealing their absolute control over lady Ladan's decision-making process.

143. **Two or more persons and Agreement** — On or about August 15, 2021, in telephonic conversations, Defendants Robey, Ezad, and Amir made it known to Plaintiff that the "abused" Defendant lady Ladan was factually and sincerely interested in becoming Plaintiff's interlocutor, spouse, and partner by virtue of the description of Plaintiff to lady Ladan, without

revealing their absolute control over lady Ladan's decision-making process.

144. **Two or more persons and Agreement** — On or about August 15, 2021, in a telephonic conversation: "Lady Ladan is only interested in a kindhearted person. She does not care about your age," stated Defendant Robey when Plaintiff mentioned his own age (71). (See EXHIBIT 3-A, Defendant Robey's sworn affidavit, Par. 11, re chronological disparity.)

145. **Two or more persons and Agreement** — Defendants Robey, the conduit of instructions and information, and lady Ladan were in communication with each other extensively and on an almost quotidian basis. Discovery will prove this beyond any doubt. (See EXHIBIT 3-A, Defendant Robey's affidavit, Par. 7 for daily contact.)

146. **Knowledge and Intent** — Defendant Amir by sending, to Plaintiff, a check for $1,700, subsequent to Plaintiff's calling both the actions and the money taken illegal, is demonstrative of Defendant Amir's and other Defendants' knowledge, intent, and deep, to-the-core involvement. The check was a prophylactic attempt at Plaintiff's seeking judicial relief, as explained in Paragraphs 80 and 81.

147. **Over Act** — On or about February 5, 2022, Defendant Amir visited Plaintiff for a week, staying in Plaintiff's apartment, in order to offer assurances and to solidify the scam: Defendant Amir, with a wry smile, on the last day: "You're going to be our relative."

148. **Over Act** — On or about November 20, 2021, Defendant Ezad and his wife Robey sent to Plaintiff an email to present to the USCIS the supposed travails, physical and psychological abuse, and hardships suffered by Defendant lady Ladan in her life and at the hands of her ex. (See EXHIBIT 4, Email composed by Defendants Robey and Ezad, re physical and psychological abuse of lady Ladan.)

149. **Over Act** — On or about February 17, 2022, Defendant Ezad, under false pretenses, obtained $1,500 from Plaintiff, through Wells Fargo Bank, and sent it to Lady Ladan. (See EXHIBIT 6, Plaintiff's notarized statement by the bank, $1000 and $500 (Pg. 3, in box), obtained by Defendant Ezad and sent to Ladan.)

150. **Intent** — Termination of Defendants' communications with Plaintiff, subsequent to the USCIS lottery results announcement is of particular significance by virtue of the stark contrast with when Plaintiff cut off his communications, for personal reasons, only for three days, on February

24, 2022, as explained in Paragraph 43, when Plaintiff received a flurry of telephonic attempts and messages from Defendants to find out what had happened to Plaintiff, all of which proved they had intended to conspire in concert to defraud Plaintiff.

151. **Intent** — March 29, 2022, Defendant Robey, with unabated brass, signed and mailed by the U.S.P.S. a sworn affidavit, under pain of perjury, knowingly and of her own volition, addressed to the USCIS, in support of "marriage" between Plaintiff Javad Dadgostari and Robey's cousin, Defendant lady Ladan. (See EXHIBIT 3-A, Defendant Robey's sworn affidavit, in support of Plaintiff's "marriage," addressed to the U.S. government.)

152. Defendant Robey's Affidavit (EXHIBIT 3-A) contains materially false assertions in Paragraphs 9, 10, 11, 13, 14, and 15 (numbers, not text, 13, 14 and 15 were handwritten by Plaintiff).

153. **Intent** — April 13, 2022, Defendant Amir, with impudent assurance, signed and mailed by the U.S.P.S. an affidavit, knowingly and of his own volition, addressed to the USCIS, in support of "marriage" between Plaintiff Javad Dadgostari and Amir's cousin, Defendant Lady Ladan. (See EXHIBIT 12, Defendant Amir's notarized statement, in support of Plaintiff's "marriage,"

addressed to the U.S. government; and EXHIBIT 3-B, Affidavit authenticating Defendant Amir's signature.)

154. Defendant Amir's Affidavit (EXHIBIT 12) contains materially false assertions in Paragraphs 9, 11, and 14 (numbers, not text, 13 and 14 were handwritten by Plaintiff).

155. **Intent** — On or about May 9, 2022, Plaintiff asked Defendant Robey the female cousin of Defendant lady Ladan on WhatsApp messaging: "Did lady Ladan win the green card lottery?" Defendant Robey scornfully, sarcastically, and inexplicably formally refused to answer: "Salam, Mr Javad, I am sorry but i didn't apply for her lottery. Please ask her directly."

156. **Intent** — May 9, 2022, when Plaintiff thanked Defendant Robey for her answer, Defendant Robey's response was the following when the relationship had been informal and friendly until then:



157. **Intent** — The jaw-droppingly absurd statement by Defendant Robey makes suspension of disbelief impossible. Pretending that she has no

knowledge of lady Ladan's life-changing event when by Defendant Robey's own admission in Paragraph 7 of her affidavit "am in touch with her almost on a daily basis" is the bathos of duplicity. (See EXHIBIT 3-A, Defendant Robey's affidavit, Paragraph 7, for daily contact.)

158. **Intent** — On or about May 9, 2022, Defendant Robey's reaction was bewilderingly startling and a red-letter event, considering the relationship between Defendants and Plaintiff had been totally amicable until then. There was no justification or any action on Plaintiff's part for Defendant Robey to be sarcastic or to cut off her relationship with Plaintiff except for the green card lottery results announcement on May 8, 2022.

159. **Intent** — Plaintiff alleges upon information and belief that Defendant lady Ladan could not have sent the bogus USCIS code to Plaintiff without the approval and consent of the three Defendants Robey, Ezad, and Amir. (See EXHIBIT 2, bogus USCIS code.)

160. **Intent** — One would think that if Plaintiff had done anything wrong, they would gladly offer that as the reason for their avoiding him. There was never any communication electronic or otherwise, indicative of any event, to justify their abrupt cutting off all communication with Plaintiff, and thus

exposing their corrupt intent: to use Plaintiff's status to import their cousin, and then disembarrass themselves of Plaintiff.

161. **Intent** — The facts in Paragraphs *supra* are demonstrative of Defendants' intent to deploy a plot whose aim was to defraud the United States by using Plaintiff as their nefarious tool. College-educated Ezad and Amir knew and understood that both their purpose and their methods of achieving this purpose were unlawful and would result in injury to Plaintiff and agreed and understood that each would act in concert with the others to achieve this pernicious purpose.

162. Plaintiff alleges upon information and belief that Defendants knew about the illicit nature of their conduct, and that Plaintiff was a means to their unlawful end.

163. Plaintiff alleges upon information and belief that Defendants coordinated their egregious actions in commission of their collusive objective in furtherance of the nefarious conspiracy, as evidence will evince all at trial.

164. All the four Defendants did knowingly combine, conspire, confederate, and agree with one another unlawfully to take illicit advantage of Plaintiff.

165. For these reasons, I respectfully ask that you find Defendants guilty of

conspiracy to defraud the United States and Plaintiff while injuring

plaintiff as explained in Paragraphs 126 through 136.

---

**THIRD CAUSE OF ACTION**
**Violation of 18 U.S.C. § 371 (Against All Defendants)**

---

166. Plaintiff re-alleges and incorporates by reference into this cause of

action all allegations set forth in this Complaint as though fully set forth

herein.

167. The United States conspiracy statute is unmistakably clear calling "any

attempt to conspire to defraud the United States government, whether

it succeeds or not, a crime."

168. Plaintiff has presented evidence that Defendants conspired to defraud

Plaintiff into making materially false statements to the U.S. government.

Defendants also knew that these statements would be used by the

government to determine the legality of Plaintiff's petition in the K-1

fiancée visa application, which had already been filled out.

169. Defendants, in their sworn affidavits, addressed to the U.S.

government, claimed in their affidavits that lady Ladan had been

"physically and psychologically mauled." However, Defendants

systematically elided and suppressed Plaintiff's request for hospital

records certifying the claimed injuries, characterizing Plaintiff's demand

for documentation as "excessive."

170. Defendant Amir's Affidavit (EXHIBIT 12) contains materially false

assertions in Paragraphs 9, 11, and 14 (numbers, not text, 13 and 14

were handwritten by Plaintiff). (See EXHIBIT 12, Defendant Amir's

notarized statement, in support of Plaintiff's "marriage," addressed to

the U.S. government; and EXHIBIT 3-B, Affidavit authenticating

Defendant Amir's signature.)

171. Defendant Robey's sworn Affidavit (EXHIBIT 3-A) contains materially

false assertions in Paragraphs 9, 10, 11, 13, 14, and 15 (numbers, not

text, 13, 14 and 15 were handwritten by Plaintiff).

172. Defendants' conspiracy was intended to obstruct a lawful function of

the government. The government has a duty to protect the rights of its

citizens, and Defendants' actions would have interfered with and

subverted this duty.

173. Defendants, as naturalized citizens of the United States, swore an oath

to the U.S. Constitution. Instead, Defendants did knowingly combine,

conspire, confederate, and agree among themselves to defraud the

United States by using dishonesty, craft, fraud, and deceit to impair,

obstruct, and defeat the lawful federal government function.

174. In the case of 18 U.S.C. § 371, courts have found that a private right of action exists in cases where Plaintiff has been injured by a conspiracy to defraud the United States. For example, in *Goland v. Merrill Lynch & Co.,* 703 F.2d 547 (9th Cir. 1983), the Ninth Circuit held that there may be a private right of action under § 371 when the conspiracy is to deprive a person of rights guaranteed by the United States Constitution. In another case, in Wright v. National Flood Insurers Association, 922 F.2d 1194 (5th Cir. 1991), the court held that homeowners who had been denied flood insurance benefits could sue the insurers under § 371 for conspiring to defraud the government. In re Vitamins Antitrust Litigation, 198 F.R.D. 296 (D.D.C. 2000), the D.C. Circuit held that there is a private right of action under 18 U.S.C. § 371 for victims of an international price-fixing conspiracy, because Plaintiffs were within the class of persons intended to be protected by the statute. Further, in  Rocha v. United States, 288 F.2d 545 (9th Cir. 1961), under18 U.S.C. the penal § 1546 states: "Whoever knowingly makes under oath any false statement in any immigration form or document required by the immigration laws or regulations shall be fined under this title or imprisoned not more than five years, or both."

175. All Defendants committed one or more of the overt and predicate acts

to effectuate the object of the conspiracy alleged, *supra*. For these reasons, Plaintiff respectfully asks that the Court find Defendants guilty of conspiracy to defraud the United States and hold them accountable.

> ## FOURTH CAUSE OF ACTION
> ### Deceit (Against All Defendants)

176. **False representation.** *Defendant must have made a false representation of material fact. This means that the representation must be something that could reasonably be expected to influence Plaintiff's decision-making.*

177. **Knowledge of falsity.** *Defendant must have known that the representation was false or must have been reckless about whether it was true or false.*

178. **Intent to deceive.** *Defendant must have intended to deceive Plaintiff. This means that Defendant must have wanted Plaintiff to believe the false representation and to act on it.*

179. **Reliance by Plaintiff.** *Plaintiff must have relied on the false representation. This means that Plaintiff must have believed the representation and acted on it.*

180. **Damages.** *Plaintiff must have suffered damages as a result of the*

*Deceit.*

181. Plaintiff re-alleges and incorporates by reference into this cause of action all allegations set forth in this Complaint as though fully set forth herein.

182. **False representation** — On or about August 15, 2021, in telephonic conversations, Defendants Robey, Ezad, and Amir introduced lady Ladan to Plaintiff and deceitfully made it known to Plaintiff that Defendant lady Ladan was factually and sincerely interested in becoming Plaintiff's interlocutor, spouse, and partner, without revealing their absolute control over lady Ladan's decision-making process.

183. **False representation** — On or about August 15, 2021, in a telephonic conversation: "Ladan is only interested in a kindhearted person. She does not care about your age," stated Defendant Robey when Plaintiff mentioned his own age (71). (See EXHIBIT 3-A, Defendant Robey's sworn affidavit, Par. 11, re chronological disparity.)

184. **False representation** — Defendants' assertions in Paragraphs 182 and 183 were devoid of honesty when they put an abrupt end to their communications with Plaintiff, upon the announcement of the green card lottery results.

185. **Knowledge and Intent** — Defendant Amir's sending, to Plaintiff, a check for $1,700, subsequent to Plaintiff's calling both the actions and the

money taken illegal, is demonstrative of Defendant Amir's and others' knowledge, intent, and deep, to-the-core involvement, and a prophylactic attempt at Plaintiff's seeking judicial relief.

186. **Knowledge of falsity** — On or about February 5, 2022, Defendant Amir visited Plaintiff for a week, staying in Plaintiff's apartment, in order to offer assurances and to solidify the scam; Defendant Amir, with a wry smile, on the last day: "You're going to be our relative."

187. **Knowledge of falsity** — At no time since May 8, 2022, when the green card lottery results were announced, has any of the three Defendants asked, "Why did you terminate your relationship with lady Ladan?" when they were the ones who had introduced her to Plaintiff and had been in close touch with Plaintiff all along. They have not uttered a single word about the trumpeting, stomping elephant present in every conversation: the bogus USCIS code and the inexplicable cessation of their communications with Plaintiff.

188. **Knowledge of the Falsehood** — As stated in Paragraph 91, Defendant Amir knew about the bogus USCIS code and asked Plaintiff, "In whose name is the USCIS code?" Plaintiff's response, "I cannot tell you."

189. **Intent to deceive** — Defendants' true intention, misrepresentation, and riddled-with-subterfuge conduct were laid bare when Defendants cut off

their communications with Plaintiff—subsequent to the USCIS
announcement of the green card lottery winners on May 8, 2022—and
made it clear they had intended to deceive Plaintiff and that Plaintiff
was no longer needed—after 10 months of grueling, arduous work.

190. **Reliance by Plaintiff** — Plaintiff relied, among other things, on the
fraudulent misrepresentation by spending hundreds of hours (419
MB), over a span of 10 months, on collecting information;
researching, requesting, studying, and translating numerous forms
and documents; exchanging messages with Defendant lady Ladan;
and maintaining telephonic communications (an estimated 80 hours),
at the urging of the three U.S.-based conspirators Robey, Ezad, and
Amir.

191. **Reliance by Plaintiff** — On or about February 17, 2022, Defendant
Ezad, under false pretenses, obtained $1,500 of Plaintiff's money,
through Wells Fargo Bank, and transferred it to Defendant lady
Ladan's account in Iran. (See EXHIBIT 6, Plaintiff's notarized
statement by the bank, $1000 and $500 (Pg. 3, in box), obtained by
Defendant Ezad and sent to Defendant Ladan.)

192. **Reliance by Plaintiff** — March 29, 2022, Defendant Robey, with
unabated brass, signed a sworn affidavit, under pain of perjury,

knowingly and of her own volition, addressed to the USCIS, in support of "marriage" between Plaintiff Javad Dadgostari and Robey's cousin, Defendant lady Ladan. (See EXHIBIT 3-A, Defendant Robey's sworn affidavit, in support of Plaintiff's "marriage," addressed to the U.S. government.)

193. **Reliance by Plaintiff** — Defendant Robey's Affidavit (EXHIBIT 3-A) contains materially false assertions in Paragraphs 9, 10, 11, 13, 14, and 15 (numbers, not text, 13, 14 and 15 were handwritten by Plaintiff).

194. **Reliance by Plaintiff** — April 13, 2022, Defendant Amir, with impudent assurance, signed an affidavit, knowingly and of his own volition, addressed to the USCIS, in support of "marriage" between Plaintiff Javad Dadgostari and Amir's cousin, Defendant lady Ladan. (See EXHIBIT 12, Defendant Amir's notarized statement, in support of Plaintiff's "marriage," addressed to the U.S. government; and EXHIBIT 3-B, Affidavit authenticating Defendant Amir's signature.)

195. **Reliance by Plaintiff** — Defendant Amir's Affidavit (EXHIBIT 12) contains materially false assertions in Paragraphs 9, 11, and 14 (numbers, not text, 13 and 14 were handwritten by Plaintiff).

196. **Damages** — On or about January 31, 2022, Plaintiff rejected a female suitor from England, who was willing to sell her house and join Plaintiff, stating to her that Plaintiff has already committed himself to a lady in Iran and cannot renege on his word. (See EXHIBIT 11, Plaintiff's email rejecting the female suitor from England.)

197. On or about February 17, 2022, Plaintiff shared the information in Paragraph 196 with Defendant lady Ladan.

198. Defendant Robey, in her sworn affidavit, in Paragraph 7, states that she is in contact with Defendant lady Ladan "almost on a daily basis"; and thus, it is reasonable to assume Plaintiff's rejection of the suitor was conveyed to other Defendants, particularly, to Defendant Robey, the conduit of information and instructions and lady Ladan's confidante.

199. **Damages** — Defendants, knowing full well Plaintiff's twilight years would hardly afford Plaintiff another opportunity to meet a viable potential life partner, continued to conceal their nefarious motive— completely bereft of veridicality.

200. **Damages** — Conspirators executed a strategy to use knowing deceit. Plaintiff's bona fide hard work and efforts and intentions and reliance on Defendants' actions evaporated when the catalogue of the nefarious contrivance of falsehoods was revealed, causing Plaintiff such a

juddering shock that Plaintiff continues to suffer as explained in

Paragraphs 126 through 136.

> **FIFTH CAUSE OF ACTION**
> **Intentional Misrepresentation (Against All Defendants)**

201. A **false statement** of material fact. The statement must be about a fact

that is important to Plaintiff's decision-making process.

202. Defendant's **knowledge** or reckless disregard for the truth. Defendant

must have known that the statement was false or must have made the

statement without caring whether it was true or false.

203. Plaintiff's **reliance** on the statement. Plaintiff must have relied on the

statement in making a decision that caused them harm.

204. Plaintiff's **damages**. Plaintiff must have suffered some type of harm as

a result of their reliance on the statement.

205. Plaintiff must **prove that Defendant knew that the statement was**

**false** or made the statement without caring whether it was true or false.

206. Plaintiff re-alleges and incorporates by reference into this cause of action

all allegations set forth in this Complaint as though fully set forth herein.

207. Plaintiff had told the individuals in his orbit, including Defendants Robey, Ezad, and Amir that Plaintiff, living alone, is looking for a female interlocutor, with a connubial potentiality.

208. **False Statement** — On or about August 15, 2021, in a telephonic conversation, Defendants Robey, Ezad, and Amir introduced Defendant lady Ladan to Plaintiff and insisted that, lady Ladan was "physically and psychologically battered by her ex, and that lady Ladan was interested in a kindhearted person." (See EXHIBIT 3-A, Defendant Robey's sworn affidavit, Par. 11 re chronological disparity and Par. 13 re abuse.)

209. **False Statement** — The Statement in Paragraph 208 was false because, despite repeated requests by Plaintiff to send documents showing hospital and iatric treatments claimed by both Defendants Robey and Ezad, as well as Defendant lady Ladan, Plaintiff never received any documentary evidence. (See EXHIBIT 5, email dated December 2, 2021, Defendant Robey's response in the middle Par. (bracketed) to Plaintiff's pressure to get hospital records.)

210. **False Statement** — On or about November 20, 2021, Defendants Ezad and Robey composed and sent to Plaintiff an email on behalf of lady Ladan, authoring Defendant lady Ladan's physical and

psychological abuse at the hands of her ex, which was only intended to delude Plaintiff, as well as the USCIS to obtain the benefit of a U.S. visa on a humanitarian basis, among other eligibility requirements. (See EXHIBIT 4, email composed by Defendants Robey and Ezad, re physical and psychological abuse of lady Ladan.)

211. **Knowledge of the Falsehood** — Defendants Robey and Ezad were in regular communication with Defendant lady Ladan and had a very personal, no-secrets-barred relationship with one another. On one occasion, Defendant Robey visited Defendant lady Ladan in Iran and took her some N95 masks. According to Defendant lady Ladan, there were no secrets between Defendant lady Ladan and Defendant Robey.

212. **Knowledge of the Falsehood** — Based on Paragraphs 208 through 210, Defendants knew their statements were false, as proven by cutting off their relationship with Plaintiff and never addressing the bogus USCIS code.

213. **Knowledge of the Falsehood** — As stated in Paragraph 91, Defendant Amir knew about the bogus USCIS code and asked Plaintiff, "In whose name is the USCIS code?" Plaintiff's response, "I cannot tell you."

214. **Reliance** — March 29, 2022, Defendant Robey, with unabated brass, signed and mailed by the U.S.P.S. a sworn affidavit, under pain of perjury, knowingly and of her own volition, addressed to the USCIS, in support of "marriage" between Plaintiff Javad Dadgostari and Robey's cousin, Defendant Lady Ladan. (See EXHIBIT 3-A, Defendant Robey's sworn affidavit , in support of Plaintiff's "marriage," addressed to the U.S. government.)

215. **Reliance** — Defendant Robey's Affidavit (EXHIBIT 3-A) contains materially false assertions in Paragraphs 9, 10, 11, 13, 14, and 15 (numbers, not text, 13, 14 and 15 were handwritten by Plaintiff).

216. **Reliance** — April 13, 2022, Defendant Amir, with impudent assurance, signed and mailed, by the U.S.P.S., an affidavit, knowingly and of his own volition, addressed to the USCIS, in support of "marriage" between Plaintiff Javad Dadgostari and Amir's cousin, Defendant Lady Ladan. (See EXHIBIT 12, Defendant Amir's notarized statement, in support of Plaintiff's "marriage," addressed to the U.S. government; and EXHIBIT 3-B, Affidavit authenticating Defendant Amir's signature.)

217. **Reliance** —Defendant Amir's Affidavit (EXHIBIT 12) contains materially false assertions in Paragraphs 9, 11, and 14 (numbers, not text, 13 and 14 were handwritten by Plaintiff).

218. **Reliance** — The affidavits by both Defendants Amir and Robey, addressed to the USCIS, in support of "marriage" between Plaintiff and Defendant lady Ladan, were issued under false pretenses because all Defendants cut off their communication with Plaintiff after the green card lottery results announcement on May 8, 2022, except for Defendant Amir, with whom Plaintiff had a 40-year relationship.

219. **Reliance** — Between September 2021 and May 2022, Plaintiff's reliance on Defendants' collective actions resulted in a case that was complicated (Plaintiff did not feel safe leaving the U.S.), and to ensure total compliance with USCIS requirements, Plaintiff had to collect, analytically read, cull, study, and analyze several hundred pages of documents—a substantial number of which required painstaking translating by Plaintiff, both written and verbal (to lady Ladan)—in preparation for filing the K–1 Fiancée Application. The approximate total of documents: 419 MB.

220. **Reliance and Damages** — On or about February 17, 2022, Defendant Ezad willingly, under false pretenses, obtained $1,500 of Plaintiff's

money, through Wells Fargo Bank, and transferred it to Defendant lady

Ladan's account in Iran. (See EXHIBIT 6, Plaintiff's notarized statement

by the bank, $1000 and $500 (Pg. 3, in box), obtained by Defendant

Ezad and sent to lady Ladan.)

221. **Damages** — On or about January 31, 2022, Plaintiff rejected a female

suitor from England, stating to the female suitor that Plaintiff has

already committed himself to a lady Ladan in Iran and cannot renege

on his word. (See EXHIBIT 11, Plaintiff's email rejecting the female

suitor from England.)

222. **Damages** — Plaintiff's jarring shock and dismay upon the discovery of

the scam in the weeks following the May 8, 2022, USCIS green card

lottery results announcement, were of such a degree that Plaintiff found

himself in a state of incomprehensible mental paralysis.

223. **Damages** — Plaintiff, subsequently, for weeks, was refusing to admit

to himself that the development was not fraudulent and perhaps

something was awry somewhere that will right itself, and thus, repeated

requests by Plaintiff of Defendant Amir to come to California and see

the volume of work done by Plaintiff.

224. **Damages** — Defendants' actions were so outrageous that Plaintiff has

suffered, among other things, damages as explained in Paragraphs

126 -136.

---

**SIXTH CAUSE OF ACTION**
**Deprivation of Property Rights (Against All Defendants)**

---

225. Plaintiff re-alleges and incorporates by reference into this cause of action all allegations set forth in this Complaint as though fully set forth herein.

226. **Knowledge** —Defendants knew that Plaintiff was entitled to property, and they deliberately made materially false statements in order to deprive Plaintiff of his property of time and resources. The sheer quantum of work involving research, translations, litigation, among other things, as of the filing of this Complaint and continuing has exceeded 1.1 GB.

227. **Knowledge** —The case of K-1 Fiancée visa had to be very strong, solid, and indisputably documented because Plaintiff had told all the four Defendants in August of 2021: "I do not trust other democracies; therefore, I cannot leave the United States."

228. **Knowledge** — Defendants Robey and Ezad and Amir were being regularly apprised of the amount of intellectual labor and preparation, both by Plaintiff himself and at Plaintiff's insistence that Defendant lady

Ladan share the complexity of the case with them vis-à-vis their objections that the process was taking too long and that the documentation was excessive.

229. **Knowledge of the Falsehood** — As stated in Paragraph 91, Defendant Amir knew about the bogus USCIS code and asked Plaintiff, "In whose name is the USCIS code?" Plaintiff's response: "I cannot tell you."

230. **Knowledge** —On or about February 8, 2022, Plaintiff brought up, in person, in Plaintiff's apartment, Plaintiff's educational project (Roc Research Business Plan) and mentioned that Plaintiff was looking for an investor and a grubstake and that "this has a billion-dollar potential," with an investment of only $1.5 million and asked Defendant Amir whether he has the capital to launch the project. Defendant Amir's response was a vague amount that he said was insufficient. (See EXHIBIT 10, Roc Research Business Plan Outline.)

231. **Reliance and Damages** — Defendants' wanton disregard of Plaintiff's valuable time, spent over a 10-month period, arduously to research, to study, and to translate numerous documents, which have resulted in hundreds of pages amounting to over 419 MB, is an attestation to Plaintiff's profound dedication and forthrightness to believe Defendants,

and thus to endeavor to comply with USCIS demands. The preceding

is exclusive of, among other things, an estimated 80 hours of

telephonic conversations, email communications (54 minimum)

knowingly perpetrated by the four Defendants under false pretenses.

232. **Reliance and Damages** — On or about January 31, 2022, Plaintiff,

notwithstanding being fully cognizant of his twilight years (71), rejected

a female suitor from England, stating to the female suitor that Plaintiff

has already committed himself to lady Ladan in Iran and cannot renege

on his word. (See EXHIBIT 11, Plaintiff's email rejecting the female

suitor from England.)

233. **Reliance and Damages** — Defendants' actions constitute, among

other things, tortious interference with prospective economic advantage

owing to Plaintiff's inability to find the time to find an investor for

Plaintiff's educational project (Roc Research Business Plan), as well as

seek a job, by virtue of the inordinate quantum of time demanded by

the USCIS application and this litigation, resulting in a lack of a free

mind needed to do so. (See EXHIBIT 10, Roc Research Business Plan

Outline.)

234. **Damages** — Plaintiff has been experiencing, among other symptoms,

inflictions as explained in Paragraphs 126 – 136.

235. Plaintiff is entitled to damages resulting from the actions and facts described, *supra*.

## SEVENTH CAUSE OF ACTION
## Violation of 18 U.S. Code § 1341 (Against All Defendants)

236. Plaintiff re-alleges and incorporates by reference into this cause of action all allegations set forth in this Complaint as though fully set forth herein.

237. 18 U.S. Code § 1341 criminalizes the use of mail or wire communication to execute a scheme or artifice to defraud.

238. Defendants' fraudulent scheme involved defrauding the United States government and Plaintiff by conspiring to abuse Plaintiff's status as a U.S. citizen to import their cousin into the U.S. under the guise of Plaintiff's interlocutor and fiancée and then dump Plaintiff, afterwards.

239. March 29, 2022, Defendant Robey, with unabated brass, signed, emailed, and then mailed by the USPS. a sworn affidavit, under pain of perjury, knowingly and of her own volition, addressed to the USCIS, in support of "marriage" between Plaintiff and Robey's cousin, Defendant lady Ladan. (See EXHIBIT 3-A, Defendant Robey's sworn affidavit, in support of Plaintiff's "marriage," addressed to the government.)

240. Defendant Robey's Affidavit (EXHIBIT 3-A) contains materially false assertions in Paragraphs 9, 10, 11, 13, 14, and 15 (numbers, not text, 13, 14 and 15 were handwritten by Plaintiff).

241. April 13, 2022, Defendant Amir, with impudent assurance, signed, emailed and then mailed by the U.S.P.S. an affidavit, knowingly and of his own volition, addressed to the USCIS, in support of "marriage" between Plaintiff Javad Dadgostari and Amir's cousin, Defendant lady Ladan (See EXHIBIT 12, Defendant Amir's notarized statement, in support of Plaintiff's "marriage," addressed to the U.S. government; and EXHIBIT 3-B, Affidavit authenticating Defendant Amir's signature.)

242. Defendant Amir's Affidavit (EXHIBIT 12) contains materially false assertions in Paragraphs 9, 11, and 14 (numbers, not text, 13 and 14 were handwritten by Plaintiff).

243. On or about February 17, 2022, Defendant Ezad, under false pretenses, obtained $1,500 of Plaintiff's money, through Wells Fargo Bank, and transferred it to Defendant lady Ladan's account in Iran. (See EXHIBIT 6, Plaintiff's notarized statement by the bank, $1000 and $500 (Pg. 3, in box), obtained by Defendant Ezad and sent to lady Ladan.)

244. Defendants in furtherance of their scheme, used an estimated telephonic communications of 80 hours and a minimum of 54 emails and the USPS

services by mailing two affidavits and then cutting off their communications with Plaintiff, subsequent to the announcement of the green card lottery results on May 8, 2022, and thus, proving they had acted in concert and intended to defraud Plaintiff and U.S. government.

245. The obtainment of $1,500, through Wells Fargo Bank, and extensive use of telephonic communications and digital texting constitute mail and wire fraud. For example, in Gipson v. Callahan, 18 F. Supp. 2d 662 (W.D. Tex. 1997), the court held that a pro se Plaintiff who alleged that he was defrauded by various Defendants through the use of the mails had stated a claim under 18 U.S.C. § 1341. The court reasoned that "[a]lthough there is no express private right of action under § 1341, courts have implied such a right where Plaintiff is within the class of persons intended to be protected by the statute and where implying such a right is consistent with the legislative scheme." Plaintiff respectfully asks the Court to find Defendants guilty, as such.

**EIGHTH CAUSE OF ACTION**
**Intentional Infliction of Emotional Distress (Against All Defendants)**

246. A false statement of material fact. The statement must be about a fact that is important to Plaintiff's decision-making process.

247. *Defendant's knowledge or reckless disregard for the truth. Defendant must have known that the statement was false or must have made the statement without caring whether it was true or false.*

248. *Plaintiff's reliance on the statement. Plaintiff must have relied on the statement in making a decision that caused them harm.*

249. *Plaintiff's damages. Plaintiff must have suffered some type of harm as a result of their reliance on the statement.*

250. Plaintiff re-alleges and incorporates by reference into this cause of action all allegations set forth in this Complaint as though fully set forth herein.

251. Plaintiff alleges upon information and belief, based on the body of facts in Paragraphs 94 through 97, among other things, is responsible, in part, for the pain, suffering, injuries, and damages inflicted on Plaintiff.

252. On or about August 15, 2021, in telephonic conversations, the two husband-and-wife Defendants (Robey and Ezad), as well as Amir, who were relatives of lady Ladan's, introduced lady Ladan, an estranged and a "no-longer femme couverte" lady, who was living in Iran, to Plaintiff and made it known to Plaintiff that the "abused" Defendant lady Ladan was the kind of connubial candidate Plaintiff was seeking.

253. On or about September 3, 2021, Since Plaintiff was actively looking for an interlocutor—strongly recommended by professionals and family members—to at least partially overcome the unfathomable trauma of premature and unexpected loss of his angelic wife after 44 years of marriage, Plaintiff accepted the challenge of petitioning the USCIS to bring Defendant lady Ladan to the U.S. on a humanitarian basis, as well as on the basis of Plaintiff's interlocutor, fiancée, and partner and then marry her.

254. **Knowledge** — Defendants never revealed that they had total control over the decision-making process of lady Ladan.

255. **False and Knowing Statements** — On or about August 15, 2021, in a telephonic conversation when Plaintiff mentioned his own age (71), Defendant Robey stated, "Lady Ladan is only interested in a kindhearted person. She does not care about your age," (See EXHIBIT 3-A, Defendant Robey's sworn affidavit, Paragraph 11, re chronological disparity.)

256. **False and Knowing Statements** — Defendants Amir, Robey, and Ezad knew that Plaintiff was, in earnest, seeking a life partner. However, by abruptly terminating their relationship with Plaintiff, subsequent to the green card lottery results announcement and then

telling Plaintiff "forget about Ladan," and refusing to talk about the

USCIS bogus code proved that their non-assertions and assertions in

Paragraphs 254 255 were knowingly deceitful. Further, by concealing

their absolute control over lady Ladan, they deceived Plaintiff into

entering into a relationship that proved to be tantamount to that with an

ingeniously programmed, cunningly disguised, and will-less entity.

257. **Knowledge** — as stated in Paragraph 91, Defendant Amir knew about

the bogus USCIS code and asked Plaintiff, "in whose name is the

USCIS code?" Plaintiff answered, "I cannot tell you."

258. **False and Knowing Statement** — On or about February 5, 2022,

Defendant Amir visited Plaintiff for about a week, staying in Plaintiff's

apartment, in order to offer assurances and to solidify the scam;

Defendant Amir, with a wry smile, on the last day: "You're going to be

our relative." Plaintiff rented a car for Amir. (See EXHIBIT 9,

Enterprise car rental contract, with Abolfateh (Amir) Marand's name in

brackets.)

259. **Reliance** — On or about September 7, 2021, Plaintiff commenced

communicating with lady Ladan through mostly WhatsApp messaging,

WhatsApp telephone, and sometimes by email (rocrca@outlook.com

and/ lolincro@msn.com).

260. **Reliance** — On or about February 17, 2022, Defendant Ezad willingly, under false pretenses, obtained $1,500 of Plaintiff's money, through Wells Fargo Bank, and transferred it to Defendant lady Ladan's account in Iran, which further solidified Plaintiff's belief. (See EXHIBIT 6, Plaintiff's notarized statement by the bank, $1000 and $500 (Pg. 3, in box), obtained by Defendant Ezad and sent to lady Ladan.)

261. **Reliance** — March 29, 2022, Defendant Robey, with unabated brass, signed and mailed by the U.S.P.S. a sworn affidavit, under pain of perjury, knowingly and of her own volition, addressed to the USCIS, in support of "marriage" between Plaintiff Javad Dadgostari and Robey's cousin, Defendant lady Ladan. (See EXHIBIT 3-A, Defendant Robey's sworn affidavit, in support of Plaintiff's "marriage," addressed to the U.S. government.)

262. **Reliance** — Defendant Robey's Affidavit (EXHIBIT 3-A) contains materially false assertions in Paragraphs 9, 10, 11, 13, 14, and 15 (numbers, not text, 13, 14 and 15 were handwritten by Plaintiff).

263. **Reliance** — April 13, 2022, Defendant Amir, with impudent assurance, signed and mailed by the USPS an affidavit, knowingly and of his own volition, addressed to the USCIS, in support of "marriage"

between Plaintiff Javad Dadgostari and Amir's cousin, Defendant lady Ladan. (See EXHIBIT 12, Defendant Amir's notarized statement, in support of Plaintiff's "marriage," addressed to the U.S. government; and EXHIBIT 3-B, Affidavit authenticating Defendant Amir's signature.)

264. **Reliance** — Defendant Amir's Affidavit (EXHIBIT 12) contains materially false assertions in Paragraphs 9, 11, and 14 (numbers, not text, 13 and 14 were handwritten by Plaintiff).

265. **Reliance and Damages** —The cumulative impact of the Paragraphs *supra* and that of the Eighth Cause of Action intensely militated in Plaintiff's mind for a relationship of indisputable import and sincerity with Defendants and resulted in several hundred pages of documents (419 MB)—a substantial number of which required painstaking translating by Plaintiff, both written and verbal (to lady Ladan)—in preparation for filing the K–1 Fiancée Application.

266. **Damages** — On or about January 31, 2022, Plaintiff rejected a female suitor from England, who was willing to sell her house and join Plaintiff, stating to her that Plaintiff has already committed himself to a lady in Iran and cannot renege on his word.  (See EXHIBIT 11, Plaintiff's email rejecting the female suitor from England.)

267. On or about February 17, 2022, Plaintiff shared the information in Paragraph 266 with Defendant lady Ladan.

268. Defendant lady Ladan shared the information in Paragraph 266 with the three co-conspirators Robey and Ezad, and Amir because Defendant Robey, the hub and the conduit of information to Defendant lady Ladan, in her affidavit, in Paragraph 7 states that she is in contact with Defendant lady Ladan "almost on a daily basis." Further, lady Ladan considered Defendant Robey a confidante (See EXHIBIT 3-A, Defendant Robey's sworn affidavit, Par. 7, about the daily contact.)

269. **Damages** — Defendants, knowing full well Plaintiff's twilight years would hardly afford Plaintiff another opportunity to meet a potential life partner, still continued to conceal their nefarious motive, with the additional perfidy—completely bereft of veridicality—rather than tell the truth following Plaintiff's report of another suitor in Paragraph 266.

270. **Damages** — As a consequence of Defendants' knowingly wanton, severe, and outrageous misconduct, Plaintiff has suffered and will suffer as explained in Paragraphs 126 - 136.

271. Defendants' willfully, quintessentially evil, sordid, and sadistic misconduct, combined with facts, *supra*, was intentional and knowing, in a malicious, oppressive, and fraudulent manner, over a span of 10

months, entitling Plaintiff to punitive damages under California Civil Code § 3294.

### NINTH CAUSE OF ACTION
### Coercion (Against all Defendants)

272. Plaintiff re-alleges and incorporates by reference into this cause of action all allegations set forth in this Complaint as though fully set forth herein.

273. At all times relevant to this complaint, Defendant lady Ladan, in her conversations with Plaintiff, evinced an abundance of sincere empathy for Plaintiff's loss of his angelic spouse to the degree that the bereaved, grief-stricken Plaintiff found the colloquies cerebrally comforting and soothing, all of which caused Plaintiff to develop a sentiment more than just an affinity for lady Ladan.

274. From on or about May 9, 2022, through on or about June 6, 2022, lady Ladan took several oaths, begged and beseeched Plaintiff to reconsider his position of severing communications with her, and that he is wrong and that she is deeply, really interested in Plaintiff. (See EXHIBIT 8, pages 1 – 9 of lady Ladan's unwavering conviction, implorations … with intense expressions of affection for Plaintiff.)

275. Plaintiff, with a high degree of probability, alleges upon information and belief, based on the facts in Paragraphs 15 through 18 and Paragraphs 54 through 62 and based on nine pages of implorations and supplications by lady Ladan in EXHIBIT 8—containing not a single word of spurning Plaintiff—that Defendant lady Ladan, over the 10 months, had developed a deep devotion and attachment to Plaintiff and was probably given, under duress, the bogus code and then coerced into sending it to Plaintiff by the three Defendants Amir, Robey, and Ezad in order to injure Plaintiff.

## Conclusion

The foregoing, in its entirety, gives rise to one question: If you go through 10 months of grooming your future groom and "relative" to achieve salvaging a psychologically and physically "mauled" lady cousin of yours, by:

A. Sending notarized, sworn affidavits in support of "marriage";

B. Authoring, on behalf of lady Ladan, a letter of abuse addressed to the USCIS;

C. Taking a trip from Oklahoma to California to offer "support" for the marriage "you're going to be our relative";

D. Exchanging 54 emails with Plaintiff to lubricate the USCIS petition;

E. Spend about $350 on dining out Plaintiff;

F. Et cetera, *supra;*

WHY would you, exactly and immediately, subsequent to the green card lottery announcement,

1) Cut off your relationship and communications with your savior;

2) Tell him, inexplicably, "forget about Ladan," and "contact the one in England that you rejected";

3) Refuse to talk about the bogus code;

4) Elude Plaintiff altogether—all in juddering contrast to February 24, 2022, when you contacted Plaintiff, in a panic, when Plaintiff was incommunicado for only three days (Par. 43); and

5) Et cetera, *supra?*

There is only one logical answer: the entire affair from the August-2021 introduction to the May-2022 revelation of the scam was a conspiracy to deceive and to defraud Plaintiff into presenting to the government a fraudulent application—confound Javad and the consequences for him!

## PRAYER

Plaintiff re-alleges and incorporates by reference into this cause of action all allegations set forth in this Complaint as though fully set forth herein.

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendants, as follows:

(1) Take under advisement the referral of this case to the U.S. Attorney General for criminal prosecution by virtue of the unlawful acts perpetrated by Defendants. The government can prosecute people who conspire or even attempt to conspire to defraud the United States or engage in aiding and abetting one in such an activity.

(2) Declare Defendants to have engaged in a civil and criminal conspiracy—and all the other Causes of Action in this Complaint—to inflict injury upon Plaintiff and to, therefore, be jointly and severally liable for all damages awarded by the Court without allocation, apportionment, or limitation of liability.

(3) If the Court disregards Plaintiff's argument, it will be punishing Plaintiff for catching Defendants flagrante delicto, as well as, for preventing the perpetration of the fraud on the government.

(3) Enjoin Defendants from committing any further acts in furtherance of said conspiracy.

(3) Enjoin Defendants from committing spoliation.

(4) Enjoin Defendants to preserve any and all documents and communications related to this Complaint, whether electronic or otherwise.

(5) Enjoin the USCIS from issuing an entry visa to Defendant Ladan

Ghaffarzadeh Jahanpasand (lady Ladan) and permanently bar her from entry to the United States of America. If the noncitizen committed marriage fraud at any time in the past, "no petition shall be approved" at any time in the future, 8 U.S.C. § 1154(c).

(6) Award Plaintiff compensatory and incidental damages in an amount not less than $250,000 for 10 months of grueling, arduous work, amounting to 1.1 GB; an estimated 80 hours of phone calls; research; translations; the Superior Court litigation; this federal Court litigation; and other injuries.

(7) Award Plaintiff punitive damages in such amount as the Court may deem appropriate to penalize Defendants for their persistent, intentional, and malicious acts of misconduct.

(8) Award Plaintiff the costs of this action and any subsequent appeal, together with such other relief, not necessarily limited to pecuniary relief as the Court may deem Plaintiff entitled to receive.

(9) Award Plaintiff General Damages for pain and suffering, mental anguish, future problems from the injury sustained, shortened lifespan, and impairment of quality of life in the amount the Court deems fair and equitable.

(10) Award Plaintiff for any and all other relief the Court deems just and proper.

(11) Defendants' actions also caused harm to Plaintiff. Plaintiff was forced to spend time and forego potential income investigating Defendants' actions.

(12) Defendants' actions should be punished to deter others from engaging in similar behavior.

## VERIFICATION

Plaintiff Javad Dadgostari is authorized to make this verification for and on behalf of himself as a party to this action. The matters stated in the foregoing Complaint are true to my own knowledge, except as to the matters which are therein stated upon information or belief, and, as to those matters, I believe them to be true. I declare under penalty of perjury under the laws of the State of California and of the United States that the foregoing is true and correct.

Plaintiff Javad Dadgostari hereby demands a trial by jury on all issues.

Executed on this 28th day of November 2023.

Respectfully submitted,

Javad Dadgostari
lolincro@msn.com
215 South Festival Drive
#207
Anaheim Hills, CA 92808
714-747-3503
Plaintiff in Pro Per

## **Declaration of Authentication of Exhibits**

Javad Dadgostari v. Robey Azadpour, et. al

I, Javad Dadgostari, declare under penalty of perjury that the following EXHIBITS are true and accurate representations of what they purport to be:

- EXHIBIT 1, Defendant Robey's email, asking Plaintiff to send all emails to her husband Defendant Ezad.

- EXHIBIT 2, Bogus USCIS code, with petitioner's name missing and the year of birth is not Ladan's.

- EXHIBIT 3-A, Defendant Robey's sworn affidavit, in support of Plaintiff's "marriage"; Par. 11 re chronological disparity and Par. 13 re abuse.

- EXHIBIT 3-B, Affidavit authenticating Defendants Robey's and Amir's signatures.

- EXHIBIT 4, Email composed by Defendants Robey and Ezad, re physical and psychological abuse of lady Ladan.

- EXHIBIT 5, Defendant Robey's response in the middle Par. (bracketed), to Plaintiff's pressure to get hospital records.

- EXHIBIT 6, Plaintiff's notarized statement by Plaintiff's bank, $1000 and $500 (in box) obtained by Defendant Ezad and sent to Ladan.

- EXHIBIT 7, Parsa's sworn Affidavit attesting $200 given to Defendant lady Ladan for books and supplies to learn English.

## Declaration of Authentication of Exhibits (cont'd)

Javad Dadgostari v. Robey Azadpour, et. Al

- EXHIBIT 8, Pages 1 – 9 of lady Ladan's unwavering conviction and implorations and supplications, with intense expressions of affection, without a single word of rejecting Plaintiff.

- EXHIBIT 9, Enterprise car rental contract, with Abolfateh (Amir) Marand's name in brackets.

- EXHIBIT 10, Roc Research Business Plan Outline.

- EXHIBIT 11, Plaintiff's email rejecting the female suitor.

- EXHIBIT 12, Defendant Amir's notarized statement addressed to the U.S. government, in support of Plaintiff's "marriage."

- EXHIBIT 13, $1,700 check issued to Plaintiff by Defendant Amir to return Plaintiff's money.

I have personal knowledge of each of these Exhibits, and I am familiar with their contents. I can testify that each of these Exhibits is what it purports to be.

Executed this 28th day of November 2023.

Javad Dadgostari
lolincro@msn.com
215 South Festival Drive # 207
Anaheim Hills, CA 92808
714-747-3503

Plaintiff Pro Se

**rocrca@outlook.com**

| | |
|---|---|
| **From:** | Bob Dolan |
| **Sent:** | Tuesday, February 1, 2022 6:26 AM |
| **To:** | robey azadpour |
| **Subject:** | RE: Sorry, be software changed the spelling of your names in the first email |

I will do so from now on. Thanks.

**From:** robey azadpour <robeyazad2015@gmail.com>
**Sent:** Monday, January 31, 2022 7:48 PM
**To:** Bob Dolan <rocrca@outlook.com>
**Subject:** Re: Sorry, be software changed the spelling of your names in the first email

Salam agha Javad  I check my email rarely please send all emails regarding Ladan case to Izad Omaz 1234@gmail.com please be aware of I forget did things very easily I want to make sure if I don't check my email at least Izad can get your email please send it directly to him . Have Great night and thank you . 🙏

Sent from my iPhone

> On Jan 27, 2022, at 4:02 PM, Bob Dolan <rocrca@outlook.com> wrote:

Defendant Robey's email, asking Plaintiff to send all emails to her husband Defendant Ezad.

# EXHIBIT 1

May 9, 2022 — The Bogus USCIS Code Sent by Defendant lady Ladan G. Jahanpasand.

The USCIS code below has the name missing and lady Ladan's Year of Birth is 1967.

**Confirmation Number:**
20226XREVVG7IGDZ
**Year of Birth:**
1982
**Digital Signature:**
F69A260CB2FA8C9C53E05FFC24A7DD0412DAC6F0

Bogus USCIS code, with petitioner's name missing and the wrong year of birth; Defendant lady Ladan's YOB: 1967.

# EXHIBIT 2

Robey Azadpour, Beneficiary's Cousin

214 Eugene St., North Salt Lake, Utah, USA, 84054

RE:   Javad Dadgostari, Petitioner, AND Ladan Ghaffarzadeh Jahanpasand,
Fiancée Beneficiary

## Letter in Support of K-1 Fiancée Visa Petition by Beneficiary's Cousin

Dear Officer:

I live at 214 Eugene St., North Salt Lake, Utah, USA, 84054. I am writing this
letter in support of my cousin, Ms. Ladan Ghaffarzadeh Jahanpasand, fiancée
and Beneficiary; and our family friend, Mr. Javad Dadgostari, Petitioner.

1. Our family has known Javad since 1985.

2. He and my brother, Amir Marand, attended the MBA program at the University
of Central Oklahoma.

3. Javad Dadgostari is an honest, sincere, reliable, and a knowledgeable person,
with a master's degree.

4. Javad was a guest in our house for dinner on several occasions in Edmond,
Oklahoma, and took my late mother out for ice cream on three occasions.

5. I introduced Ladan to Javad in August of 2021.

6. He, according to my cousin, has been in communication with her, through text
messages and phone on WhatsApp and email (rocrca@outlook.com)
extensively since.

7. I am also in communication with my cousin Ladan's on WhatsApp voice and
text, almost on a daily basis.

8. I have known my cousin from Iran since childhood when our families regularly
associated with each other.

9. I know Ladan is a lady of her word, a dedicated mother, with a loutish, brute,
serial philanderer ex (please see Ladan's sworn testimony Defendant Robey's

10. The relationship between Javad and Ladan is currently, . sworn affidavit, in
my cousin, is meaningful, caring, and solid.   support of Plaintiff's
"marriage"; Par. 11 re
chronological disparity

EXHIBIT 3-A (Pg. 1/2) and Par. 13 re abuse.

11. Ladan, I, as well as, Petitioner Javad, are fully aware of the age difference and consider it of no concern.

12. Ladan has told me that Javad has already given his word that he will open a shared bank account once she arrives.

13. I know that Ladan has been mauled, beyond description, both physically and psychologically by her ex for too long.

14. I would like to request that you take under advisement the fact that this is a bona fide, sturdy covenant and that my cousin, Ms. Ladan Ghaffarzadeh Jahanpasand, **deserves a visa and a decent, respectful, non-violent husband just on a humanitarian basis**. Her two sons, completely subordinated by her ex, have kept her under siege by turning her into a house servant and deprived her of all rights to privacy, with zero consideration for her psychology.

15. I know Javad has a kind, caring and peaceable character. Knowing these traits, I feel Javad and Ladan will complement each other and lead a happy life.

Wherefore, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Robey Azadpour
Full Name

B. Azadpour
Signature

On the 29th ~~1st~~ day of March, 2022 before me, the undersigned, a Notary Public in and for said State, personally appeared:

**State of Utah**

County of Davis

Subscribed and sworn (or affirmed) to before me on this 29th day of March, in the year 2022 by Robey Azadpour.

Witness my hand and official seal

Julia Lintz
Notary Public

EXHIBIT 3-A (Pg. 2/2)

JULIANNE LINTZ
Notary Public - State of Utah
Comm. No. 701207
My Commission Expires on
Jul 11, 2022

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### AFFIDAVIT

My name is Edward Ahad Marand, and I reside at 7 South RidgePointe Dr., Edmond, OK 73034. I am issuing this affidavit in October of 2023 by virtue of the litigation pending in the above-mentioned Court.

I, Edward Ahad Marand, being duly sworn do hereby depose and state the following:

1. My relationship to and familiarity with the two documents signed by Robey Azadpour and Abolfateh (aka "Amir") Marand are based on my personal knowledge of the factual statements made by the deponents.

2. My date of birth is March 5, 1955. I am a sibling of the two signatories: my brother Abolfateh (aka "Amir") Marand and my sister Robey Azadpour.

3. The two documents dated March 29, 2022, and April 13, 2022, are written respectively by Robey Azadpour (my sister) and Amir Marand (my brother) and are addressed to the USCIS officer, in charge of processing the K-1 visa, in support of marriage between Javad Dadgostari and Ladan G. Jahanpasand.

4. I worked with my brother Amir Marand from about July 1994 to July 1995 at Maine Street Minimart, located at 1602 East Maine Street, OK 73070.

5. During the time, in paragraph 4, I worked as Cashier and Accountant, during which time I observed Amir's signature on many outgoing documents, including invoices.

6. Owing to my proximity to and familiarity with my sister Robey Azadpour's handling of documents, I am completely familiar with her signature.

7. The two documents are true and accurate copies of the originals.

8. I attest with absolute certainty and swear, under penalty of perjury, that the signatures of both deponents in the above-mentioned documents are authentic and genuine.

Subscribed and sworn to before me this

*Edward Ahad Marand*

Affidavit authenticating signatures of Defendants Robey's sworn affidavit & Amir's in EXHIBITS 3-A & 12-A.

EXHIBIT 3-B (Pg. 1/2)

# WITNESSING OR ATTESTING A SIGNATURE

State of ____Oklahoma____ }

County of ____Oklahoma____ }

Signed or attested before me on ___10/19/23___ by ____Edward Marand____.

                                         Date                         Name(s) of Individual(s)

(Seal, if any)

ROBIN L. MILLER
NOTARY
# 23010355
EXP. 08/02/27
PUBLIC
STATE OF OKLAHOMA

_____
(Signature of notarial officer)

____Notary - Librarian____
(Title and Rank)

(My commission expires: ___08/02/2027___)

(My commission # ___23010355___)

| Description of Attached Document (Optional) |
| --- |
| Title or type of document: __Affidavit of authentication__ |
| Document date: __10/19/2023__     Number of Pages: __1__ |
| Signer(s) other than name above: _____ |

# EXHIBIT 3-B (Pg. 2/2)

Fwd: Ladan

robey azadpour <robeyazad2015@gmail.com>
Sat 11/20/2021 8:03 PM
To:Bob Dolan <rocrca@outlook.com>

**From:** Mine <omaz1234@gmail.com>
**Date:** November 20, 2021 at 9:01:57 PM MST
**To:** Robey Azadpour <robeyazad2015@gmail.com>
**Subject:** Ladan

To whom may have a pity on me:
Every young lady has a dream for a marriage in happiness and prosperity. To walk into wedding in a white dress until death do us a part. I had set my heart and soul in my marriage to be prosperous and happy for my husband and family. However, my dreams were shattered shortly after the wedding vows were made. My husband (Samad Amirkasebi) become stubborn, always angry, complaining, listened to what others said, and most importantly always after his own pleasures. He was never happy at home. Samad always raised his hand when I asked questions, since I had no rights to know or be involved in our family affairs. He once slapped me so hard that I lost hearing in my left ear, needing to have an ear drum repair due to sudden rupture. To this day, I still have hearing loss. In another Seth defying instant he attacked me with a butcher knife when I was pregnant with our first child. I had a deep cut in my right arm that needed a survey. I almost lost my first son. Thank goodness I got saved. But to come back to a life in hell. Samad was always after his own pleasures and happiness. Family had no meaning in his brain. My in laws persuaded us to have another child knowing what their son was like in hopes he will reverse his behavior becoming a good husband and father figure. But nothing changed after my 2nd pregnancy only to get worse than before. He got into a temporary marriage without telling me. I had no idea and couldn't ask anything because of the safety of my children. Times past and in 1997, he ran off with our housemaid that used to help me with cleaning twice a week. Only god knows, what I had to go through. I started house cleaning job to complement a mere 500,000 Toman alimony payment that was pennys in the high inflation. When COVID19 started I lost my job since no one wanted any outsider to come into their homes for cleaning. I am now living with my grown up sons. They are my hope and life to live for. My ex-husband increased the alimony to 1,000,000 Toman but with inflation running as high as it is, this money only lasts for a week or two at the most if very conservative. My sons have reached an age of needing to establish family. I know I'll have to leave their home and don't know what to do, and where to go?
Please help me.
Respectfully,
Ladan

Email composed by
Defendants Robey
and Ezad, re physical
and psychological
abuse of lady Ladan.

# EXHIBIT 4

**lolincro@msn.com**

| | |
|---|---|
| **From:** | none none |
| **Sent:** | Sunday, December 5, 2021 11:25 AM |
| **To:** | robey azadpour |
| **Subject:** | RE: Ladan, Affidavit, Farsi |

Hi,

Thank you for pointing out Ladan's last name. You are correct. In the United States such names are hyphenated. I'm not sure how to handle her last name. But I will go by the passport.

**From:** robey azadpour <robeyazad2015@gmail.com>
**Sent:** Thursday, December 2, 2021 7:35 PM
**To:** none none <lolincro@msn.com>
**Subject:** Re: Ladan, Affidavit, Farsi

Hi there,
Ladan's last name is Ghafarzadeh Jahanpasand. Please check her passport and correct accordingly. Ladan is getting back with me on Saturday for her hospital records.

Thank you
Robey

Sent from my iPhone

On Dec 2, 2021, at 8:47 AM, none none <lolincro@msn.com> wrote:

Hi,

I need help with a few formatting problems. I will call tonight.

Javad
<Ladan, Affidavit, Farsi.docx>

Defendant Robey's
response in the middle
Paragraph
(bracketed), to
Plaintiff's pressure to
get hospital records.

# EXHIBIT 5

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____ Orange _____ )

On _____ June 1st, 2023 _____ before me, _____ Eduardo Vasquez _____
(insert name and title of the officer)

personally appeared _____ Javad Dadgostari _____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____        (Seal)

Plaintiff's notarized statement by the bank, $1000 and $500 (Pg. 3, in box), obtained by Defendant Ezad and sent to lady Ladan.

# EXHIBIT 6(Pg. 1/3)

# Wells Fargo® Preferred Checking

March 7, 2022 ▪ Page 1 of 5



WELLS FARGO BANK, N.A.
18356 IRVINE BLVD
TUSTIN, CA 92780

SOHEILA DADGOSTARI
JAVAD DADGOSTARI
2222 E 1ST ST APT 221
SANTA ANA CA 92705-3802

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
We accept all relay calls, including 711
**1-800-TO-WELLS** (1-800-869-3557)

*En español:* 1-877-727-2932

*Online:* wellsfargo.com

*Write:* Wells Fargo Bank, N.A. (348)
P.O. Box 6995
Portland, OR 97228-6995

## You and Wells Fargo

Thank you for being a loyal Wells Fargo customer. We value your trust in our company and look forward to continuing to serve you with your financial needs.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com or call the number above if you have questions or if you would like to add new services.*

| Service | | Service | |
|---|---|---|---|
| Online Banking | ✓ | Direct Deposit | ✓ |
| Online Bill Pay | ✓ | Auto Transfer/Payment | ✓ |
| Online Statements | ✓ | Overdraft Protection | ☐ |
| Mobile Banking | ✓ | Debit Card | ✓ |
| My Spending Report | ✓ | Overdraft Service | ☐ |

Other Wells Fargo Benefits

**Help take control of your finances with a Wells Fargo personal loan.**
Whether it's managing debt, making a large purchase, improving your home, or paying for unexpected expenses, a personal loan may be able to help. See personalized rates and payments in minutes with no impact to your credit score.
**Get started at wellsfargo.com/personalloan.**

## Statement period activity summary

| | |
|---|---|
| Beginning balance on 2/8 | $6,978.42 |
| Deposits/Additions | 2,009.53 |
| Withdrawals/Subtractions | - 3,511.10 |
| **Ending balance on 3/7** | **$5,476.85** |

Account number: **5389421487**

SOHEILA DADGOSTARI
JAVAD DADGOSTARI

*New York account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): 026012881

# EXHIBIT 6  (Pg. 2/3)

(348)

March 7, 2022 ■ Page 2 of 5

**WELLS FARGO BANK, N.A.**
18356 IRVINE BLVD
TUSTIN, CA 92780



### Overdraft Protection

This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo branch.

### Interest summary

| | |
|---|---|
| Interest paid this statement | $0.04 |
| Average collected balance | $5,857.92 |
| Annual percentage yield earned | 0.01% |
| Interest earned this statement period | $0.04 |
| Interest paid this year | $0.19 |
| Total interest paid in 2021 | $0.84 |



### Transaction history

| Date | Check Number | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|---|---|---|---|---|---|
| 2/8 | | Purchase authorized on 02/07 City of Laguna Bea Laguna Beach CA S582038814245686 Card 2599 | | 2.00 | 6,976.42 |
| 2/11 | | Purchase authorized on 02/11 Fresh Choice An Anaheim CA P000000932295279 Card 2599 | | 144.24 | 6,832.18 |
| 2/14 | | Purchase Return authorized on 02/12 Enterprise Rent-A- Tustin CA S382036698532897 Card 2599 | 300.00 | | 7,132.18 |
| 2/16 | | So Cal Edison CO Bill Paymt 220215 700215921640 Dadgostari Javad | | 35.25 | 7,096.93 |
| 2/17 | | Zelle to Azadpour Ezad on 02/17 Ref #Rp0Q8Y353Z | | | |
| 2/18 | | Purchase authorized on 02/17 Paypal *Faxzero CO 402-935-7733 OR S302046814863570 Card 2599 | | 1,000.00 | 6,096.93 |
| 2/18 | | Zelle to Azadpour Ezad on 02/18 Ref #Rp0Q6277NC | | 2.09 | |
| 2/22 | | Purchase authorized on 02/19 Match Point Tennis Santa Ana CA S382050860913258 Card 2599 | | 500.00 | 5,594.84 |
| 2/22 | | Purchase authorized on 02/21 Papa John 1104 Irvine Tustin CA P000000086865831 Card 2599 | | 25.00 | |
| 2/22 | | Purchase authorized on 02/21 Trader Joe's # 197 Tustin CA P302053008730250 Card 2599 | | 20.74 | |
| 2/22 | | Purchase authorized on 02/21 Smart and Final Tustin CA P000000989879209 Card 2599 | | 56.33 | |
| 2/23 | | Recurring Payment authorized on 02/22 Spectrum 855-707-7328 MO S382053383729099 Card 2599 | | 53.32 | 5,438.45 |
| 2/28 | | Purchase authorized on 02/27 Amzn Mktp US*1W8Zu Amzn.Com/Bill WA S302056351170848 Card 2599 | | 130.14 | 5,308.31 |
| 2/28 | | Purchase with Cash Back $ 130.00 authorized on 02/28 USPS PO 05798005 340 E 1S Tustin CA P462060014907232 Card 2599 | | 30.56 | |
| 3/1 | | Uspbgc-Pbgc Non Pn Pmts/BG Mar 22 1Hf6J525K/22060 Dadgostari | 97.49 | 140.48 | 5,137.35 |
| 3/1 | | Recurring Transfer to The Nayeri-Dadgostari Family Revocable Portfolio Checking Ref #Op0Dpw2Pcq xxxxxx9406 | | 10.00 | |
| 3/1 | | Bill Pay Con Edison of New York Recurring Xxxxxxxxxxx0058 on 03-01 | | 16.10 | |
| 3/3 | | Bill Pay Metro East Recurring No Account Number on 03-01 | | | |
| 3/3 | | SSA Treas 310 Xxsoc Sec 030322 xxxxx3683A SSA Javad Dadgostari | 1,612.00 | 1,256.00 | 3,952.74 |
| 3/7 | | Purchase authorize S38206480869385 | | | 5,564.74 |
| | | | | 9.99 | |

# EXHIBIT 6 (Pg. 3/3)

I, Javad Dadgostari, declare under penalty of perjury that the foregoing is true and correct.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

## AFFIDAVIT

My name is Hossein Parsa, and I reside at 725 Dalrymple Rd. Unit 5-I, Sandy springs, GA 30328.

I am issuing this affidavit in October of 2023 by virtue of the litigation pending in the above-mentioned Court.

I, Hossein Parsa, being duly sworn do hereby depose and state the following:

1. My relationship with Javad Dadgostari originated in about 1984, when we both attended the University of Central Oklahoma, in Edmund, Oklahoma.

2. My date of birth is December 26, 1953.

3. In or about March 2022, Javad Dadgostari asked me to give $200 to Ladan Ghaffarzadeh Jahanpasand, who resided in the City of Tabriz, Province of Eastern Azerbaijan, in Iran.

4. The $200 was intended for Ladan Jahanpasand to purchase books and supplies to study English.

5. I was reimbursed for the $200 by Javad Dadgostari by check number 115, dated October 7, 2022.

I declare under penalty of perjury, under the laws of the State of Georgia and the United States laws that the foregoing is true and correct.

M. HOSSEIN - PARSA

NOV 3, 2023

Hossein Parsa's sworn Affidavit attesting $200 given to Defendant lady Ladan for books and supplies to learn English.

# EXHIBIT 7

## Lady Ladan's Last Two Weeks of Communications with The Plaintiff
### From on or about May 9, 2022, through on or about June 6, 2022
- ### They include 15 phone calls not answered by the Plaintiff.



On or about May 10, 2022, I swear on my honor, on the souls of my [late] parents, and my children that I have not been dishonest with you, and will not. I am telling you again that you crushed me; you broke me; you tore me apart with your words because I am completely clueless about what you're talking about.

I am telling you again I feel sorry for you that you had these thoughts about me. I hope someday you will realize your mistake. I thought that you loved me, but with these words and actions you proved the op[posite] to you. [sarcastic].

Nine Pages of lady Ladan's unwavering conviction and implorations ... of affection, without a single word of rejecting Plaintiff.

EXHIBIT 8, Page 1 of 10



I had not tasted happiness in my life for a long time. I always wanted to live

with someone who really liked me, and I liked him. From the day I met you,

that feeling came alive in me. I realized that you were the person I have

always wished for. As time has progressed, I have become so fond of you that I cannot accept anyone else. God is my witness that I have not told you a single word of a lie. I have been straightforward. The fact that you thought about me this way makes me feel sad. I am leaving you alone with your conscience so that you can think a little and see Is there any possibility that I would betray or lie to you? I would never do such a thing because I honestly like you and will. I am honestly telling you that I had registered for the [green card] lottery; in fact, my son's girlfriend and I registered together. I leave it up to you to judge. I so intensely miss hearing your voice.



... Remember that I would not swear on the souls of my [late] parents if I were lying because I am sure I told the truth. Since the moment I read your email, I have had an unabated pain in my heart. I am asking God to bring about my death because you do not believe me.

# EXHIBIT 8, Page 3 of 10

Since the day I became fond of you, I never disbelieved you. I did everything you told me to. You told me not to go on a trip, I did not. You told me not put makeup on, I did not. You told me not to go to the beauty parlor, I did not. To sum it all up, I did everything you told me to because I like you. Therefore, I do not want you to be upset anymore. You handle this any way you like, but I am telling you that you will realize your mistake. You will regret the hasty and cruel judgment [of me]. Because everything you said about me is untrue. I had called to explain everything on the phone, but you did not answer because [machine] translations make a lot of mistakes.



EXHIBIT 8, Page 4 of 10



… I did not expect you to be this stone coldhearted. I am going mad because I have not heard your voice for several days. By God, you are merciless. Today you answered neither my messages nor my phone calls. You must have found someone else because one cannot let go of someone he likes this easily. I will do my best for you until the last moment.

It is all right. If you do not want to answer, don't. I tried my best to prove to you that I did not lie about a single word. It is you whose judgment is wrong. In my life, what I have always hated is lying, and I hate anyone who lies to me, so do not accuse me of lying. Now that you yourself want things this way, fine; I won't bother you. I wish you a successful and prosperous life, but I am sure you will soon realize your mistake. But…

EXHIBIT 8, Page 5 of 10



May 12, 2022, [after five unanswered phone calls] I implore you to answer; I have something [to say/to do with you]; for the sake of all those moments that we were together, though far away from each other but with our hearts together. For the sake of Kathryn's [Javad's late spouse] soul, answer, please!

May 12, 2022, [after two more unanswered phone calls] Javad, why are you doing this to me? I am asking God to take my life away so that I can get rid of this abject, miserable life. I knew that I was not destined to be happy; what I saw was just a dream.

EXHIBIT 8, Page 6 of 10







WhatsApp

Chats

la

Ladan 11/5/2022
Ladan turned on disappearing..

Ladan

Missed voice call at 2:24 PM — Call back

Missed voice call at 2:24 PM — Call back

جواد چرا اینکارو بامن میکنی،؟از خدا میخوام که هرچه زودتر جونمو بگیره واز این
زندگی نکبت بار خلاص بشم.من میدونستم که خوشبختی به من نیومده.همه یه
رویایی بیش نبودن که من دیدم.

Missed voice call at 2:32 PM — Call back

پریا ارجمند
۰۹۲۱۳۲۳۰۷۶۵

سلام لادن خانوم
والا گفتش ک سرچ میکنین اطلاعات شمارو نمباره

واقعیتش من خودم ثبت نام رو انجام ندادم

چون اینترنت قوی میخواس برا ثبت نامش

کافی نت اون کد رو به من داد

Type a message

Type here to search

WhatsApp

Chats

la

Ladan 11/5/2022
Ladan turned on disappearing..

Ladan

Forwarded
چون اینترنت قوی میخواس برا ثبت نامش

Forwarded
کافی نت اون کد رو به من داد

Forwarded
حالا من نمیدونم
شاید اصلا نتونسته ثبت نام کنه الکی یه چیزی داده

این پیامهای پریاست

Missed voice call at 8:41 PM — Call back

Image
8:57 PM

Missed voice call at 9:22 PM — Call back

Missed voice call at 9:22 PM — Call back

Type a message

Type here to search

WhatsApp

Chats

la

Ladan 11/5/2022
Ladan turned on disappearing...

Ladan

Missed voice call at 9:41 PM — Call back

Image
8:57 PM

Missed voice call at 9:23 PM — Call back

Missed voice call at 9:22 PM — Call back

Missed voice call at 9:21 PM — Call back

Please return the cherderGhaz you received from Hossain's sister and the cherderGhaz you received from me to Hossain's sister. Thank you.

Type here to search

WhatsApp

Chats

la

Ladan 11/5/2022
Ladan turned on disappearing...

Ladan

The recording of your voice is unintelligible. Please call.

As for me, I have contacted a psychoanalyst to see how a lady like you is capable of doing this kind of massive damage to a man. I am a highly knowledgeable, well-read person. I have never heard about nor read about a woman like you.

6/10/2022

Image
5:36 AM

سلام
فقط میخواستم به چیزی بگم و کلا از زندگیت برم بیرون،
یادته یه روز عصر گفتم میرم خونه داداشم برنامه طلاقمو به اونا بگم.چون داداش
بزرگمه.تو هم گفتی آره بگو.من رفتم گفتم واز اونجایی که من با زنداداشم اینا
صمیمی هستم.به زنداداشم برنامه نورو گفتم.البته چون دیدم زنداداشم میگفت

Type a message

Type here to search

June 6, 2022, [after several more unanswered phone calls] hello, I just wanted to say something and completely get out of your life…. I know God will give you your answer.  You are the second person who decimated my life; the first one was my husband and you are the second one. I was sure I would make you happy and create an ideal, happy life that you want for you, but you'll have to live the way you are now because my wailings and curse will not allow you happiness. I assure you of that.

**I declare under penalty of perjury and under the laws of the State of California and the United States that the foregoing is correct and accurate.**

Javad Dadgostari
Plaintiff, Pro Se
Javad Dadgostari
215 South Festival Drive # 207
Anaheim Hills, CA 92808
Tel: 714-747-3503
Email: lolincro@msn.com

EXHIBIT 8, Page **9** of **10**

# Certificate of Accuracy

This is to certify that the attached translation from <u>Farsi</u> into <u>English</u> is a true, accurate, and faithful representation of the submitted copy of the original to the best of my training, knowledge, and ability. **I am a Certified New York State Unified Court System Translator and Interpreter**, fully fluent in and qualified to translate into and from the language.

To which I set my hand and seal.

November 28, 2023

Javad Dadgostari
lolincro@msn.com
714-747-3503
215 South Festival Drive
# 207
Anaheim Hills, CA 92808

**Roc Research**
Translations & Interpreting
in Standard English — Since 1994
RocR@nyc.rr.com (646) 756-4010



**Rental Agreement Summary**
RA#: 5L7QPZ
Renter: JAVAD DADGOSTARI
Billing Cycle: 24-HOUR

| 🗓 Dates & Times | | 📍 Location |
|---|---|---|

**Pick up**

Saturday, February 5, 2022 11:14 AM
Start Charges:
Saturday, February 5, 2022 11:14 AM

5 AUTO CENTER DR
TUSTIN, CA 92782-8402
(714) 838-1189

**Anticipated Return**

Saturday, February 12, 2022 11:30 AM

5 AUTO CENTER DR
TUSTIN, CA 92782-8402
(714) 838-1189

| 🚗 Vehicle | |
|---|---|

| 2021 TOYO RAV4 XLE2 SILVER | License: AZ CWL0685 |
|---|---|
| VIN: 2T3W1RFVXMW112918 | Vehicle: 7T4GN3 |
| **Pickup:** 02/05/2022 @ 11:14 AM | ODO:32610 Fuel:1/2 |

**Vehicle Condition:**

Passenger Rear Door
Scratch:

| 💲 Summary of Charges | |
|---|---|

| 💲 Estimated Renter Charges | | |
|---|---|---|

| Charges | Price/Unit | Total |
|---|---|---|
| TIME & DISTANCE 2/5/22-2/12/22 | $374.99 / Week | $374.99 |
| NO CHARGE DISTANCE 2/5/22-2/12/22 | $0.00 / Mile | $0.00 |
| DAILY RATE: | $75.00 / Day | |
| WEEKLY RATE: | $374.99 / Week | |
| HOURLY RATE: | $25.00 / Hour | |
| ADDITIONAL DRIVER 2/5/22-2/12/22 | $15.00 / Day | $105.00 |

**Optional Protections Accepted**

| DW/CDW OPTIONAL 2/5/22-2/12/22 | $30.99 / Day | $216.93 |
|---|---|---|
| RAP 2/5/22-2/12/22 | $5.99 / Day | $41.93 |
| PAI/PEC 2/5/22-2/12/22 | $5.13 / Day | $35.91 |
| SUPPLEMENTAL LIABILITY PROTECTION 2 2/5/22-2/12/22 | $8.75 / Day | $61.25 |

**Optional Protections Declined**

No optional protections declined.

Renter Acknowledgement of Accepted and Decli

I acknowledge that I have accepted or declined protections as indicated above.

**Taxes and Fees**

| VEHICLE LICENSE RECOVERY FEE | $1.76 / Day | $12.32 |
|---|---|---|
| SALES TAX (7.75%) | 7.75% | $37.20 |
| Total Estimated Charge: | | $885.53 |
| Payments: | | |
| VISA ******2599 | Sale | ($1185.53) |

Renter Acknowledgement of Charges

I acknowledge that I have reviewed and agree to all Estimated Renter Charges and fees listed on Summary of Charges and further agree to pay for final charges in accordance with the Additional Terms and Conditions of this Contract.

Owner: ENTERPRISE RENT-A-CAR COMPANY OF LOS ANGELES, LLC

**Additional Drivers**

No Additional Drivers are authorized to drive the vehicle with the exception of the drivers listed below.
*(Additional driver names listed here if applicable)*

 ABOLFATH MARAND

Please keep this Rental Agreement Summary with you in the vehicle during the rental.

| ⚖ Local Addenda | |
|---|---|

⚠ **WARNING: Operating, servicing and maintaining a passenger vehicle or off-road vehicle can expose you to chemicals including engine exhaust, carbon monoxide, phthalates, and lead, which are known to the State of California to cause cancer and birth defects or other reproductive harm. To minimize exposure, avoid breathing exhaust, do not idle the engine except as necessary, service your vehicle in a well-ventilated area and wear gloves or wash your hands frequently when servicing your vehicle. For more information go to www.P65Warnings.ca.gov/passenger-vehicle.**

**DAMAGE WAIVER NOTICE: RENTER ACKNOWLEDGES RECEIPT OF ORAL DISCLOSURE THAT DAMAGE WAIVER, C** Enterprise car rental
**KNOWN AS** contract, with Abolfath
**OR COLLIS** (Amir) Marand's name
**MAY BE D** in brackets.
**MAINT**  IN
LI

# EXHIBIT 9

## Roc Research Business Plan Outline

6970 E Via El Estribo
Anaheim, CA 92807
714-747-3503

Mailing Address
Javad Dadgostari
6970 E Via El Estribo
Anaheim, CA 92807
949-310-8211

### Presentation Style: Investor's and Client's Perspectives

Copyright 2021

**\*Please note that receiving the proposal legally binds you to the terms and conditions of the strictest confidentiality and non-disclosure pledge set by Roc Research and signed by you.**

### Table of Contents

Page

1.0. Executive Summary ............................................................... 1

2.0. Description of the Project ........................................................ 1

3.0. Subscription Process ............................................................. 1

   3.1. Review Tests

   3.2. Group Subscriptions

4.0. Market Analysis & Competition.................................................. 4

5.0. Our Advantages.................................................................. 5

   5.1. BLANK

   5.2. BLANK

   5.3. BLANK

6.0. Pricing...................

EXHIBIT 10 · Roc Research Business Plan Outline.

7.0. Refund Policy ................................................................. 10

8.0. Structure of the Business.................................................. 10

9.0. Management and Personnel.............................................. 11

   9.1. Full-Time Employees and Resources

   9.2. Contractual/Part-Time Employees, Years 1 & 2

   9.3. Full-time Employees, Year 3, Opening Day

10.0. Authoring and Translation ............................................. 11

   10.1. Authoring

   10.2. Translation

11.0. Target Clientele ......................................................... 14

12.0. Marketing Plan .......................................................... 15

13.0. Operating Procedures .................................................. 17

   13.1. Prior to Physical Office,  Years 1 and 2

   13.2. Year 3; Opening Day

   13.3. Office Equipment

   13.4. Teamwork

14.0. Technology, Security, and Intellectual Property Rights ............... 17

15.0. Risks and Risk Management
.................................................................................... 18

   15.1. Internal

   15.2. External

   15.3. Urgency for Rapid Expansion

16.0. Value of the Deal ....................................................... 18

17.0. Exit Strategy ............................................................ 19

18.0. Financial Plan ...........................................................19

   18.1. Start-up Costs (all capitalized, Years 1 & 2)

   18.2. Working Capital (Years 1-2: preparation; Year 3: operation)

   18.3. Monthly Profit-Loss Projection, Year 3 (1st year of operation)

   18.4. Total Cumulative

EXHIBIT 10

## Rock Research Business Plan Appendices II

Appendix A ..................................... Question Formats and Examples

Appendix B .......Teacher Registration Form & Class Performance Report

Appendix C ......................................... Alternate Subscription Options

Appendix D .......................................................................... Personnel

Appendix E ................................... Cost of Authoring and Translation I

Appendix F .................................. Cost of Authoring and Translation II

Appendix G ...................................................... Advertising Samples I

Appendix H ...................................................... Advertising Samples II

Appendix I (details) .............................. Students and Schools Statistics

Appendix J ................................... Cost of Authoring and Translating ESL

Appendix K .................................................................Tables A, B, and C

Appendix L .............................................. Bonus Question Table To $4K

Appendix M .................Test Preparation and Minimum Number of Clients

Appendix N ...................................... Glossary, Programs, & Acronyms

# EXHIBIT 10

Page **3** of 3

**rocrca@outlook.com**

| | |
|---|---|
| **From:** | Bob Dolan |
| **Sent:** | Monday, January 31, 2022 2:55 PM |
| **To:** | ▬▬▬ |
| **Subject:** | Salam |

Hi Ferri,

Thank you so much for contacting me again to see how I'm doing. I'm glad that you have recovered from your illness.

You are an attractive lady, with substantial means and with professional skills, which would not place a financial burden on me even though I can handle it. On the other hand, I have been thinking very hard about what you said about my commitment in connection with helping the lady in Iran. I agree with almost everything you said that it is going to be awfully hard and perhaps impossible, not to mention all the expenses involved.

To be honest with you, no matter how I look at it, I cannot find myself breaching the covenant I made with the lady. Even if the project happens to be a total failure, I am a man of my word and I find it an impossibility to renege on it.

Javad

**From:** ▬▬▬▬▬▬▬▬
**Sent:** Wednesday, January 26, 2022 9:49 AM
**To:** rocrca@outlook.com
**Subject:** Salam

Salam Javad,
I hope you are doing well. I sent you salam to your WhatsApp.
Kind Regards,
▬▬

Plaintiff's email
rejecting the female
suitor from England.

# EXHIBIT 11

Abolfateh Marand, Cousin of Beneficiary
214 South 16, Enid, OK 73701

RE:  Javad Dadgostari, Petitioner, AND Ladan Ghaffarzadeh Jahanpasand,
Fiancée Beneficiary

## Letter in Support of K-1 Fiancée Visa Petition

Dear USCIS Officer:

My name is Abolfateh Marand, and I live at the above address. I am writing this letter in support of my cousin, Ms. Ladan Ghaffarzadeh Jahanpasand, fiancée and Beneficiary; AND our family friend, Mr. Javad Dadgostari, Petitioner.

I am signing the financial support form I–134 for Javad and Ladan for the following reasons:

1. I have known Javad since 1984.
2. When neither Javad nor his late wife Kathryn was able to find gainful employment, I helped them move to New York in 1986.
3. I and Javad attended the MBA program at the University of Central Oklahoma and took several courses together for two years.
4. We played sports on the campus of the University of Central Oklahoma.
5. Javad and I have kept in touch regularly since 1986, both on the phone, as well as visiting him and his late wife in person in New York.
6. Javad was a guest in our house for dinner on several occasions in Edmond, Oklahoma, and took my late mother out on several occasions.
7. My sister Robey Azadpour and I introduced Ladan to Javad in August of 2021.
8. Javad has been in communication with Ladan, through text messages and phone on WhatsApp and email (rocrca@outlook.com) exte  Defendant Amir's

[Type here]                    EXHIBIT 12(Pg. 1/2)

notarized statement, in support of Plaintiff's "marriage," addressed to the U.S. government

9. I have been asking both Javad and my sister Robey about the progress in their relationship. It is serious, mutually trusting, and purposeful.

10. I have known my cousin Ladan from Iran since childhood when our families regularly visited each other.

11. I know Ladan to be a lady of good character and a caring mother.

12. Javad plans to open a joint bank account, with my contribution, as well, once Ladan arrives in the United States.

13. It is my sincere request that you take into consideration the preceding statements, as well as the fact that I would not risk my assets or put myself in legal jeopardy if this were not a relationship bound in good faith.

14. Since I have known Javad, he has never breached even a minor promise, much less an undertaking of this magnitude. It is my firm belief that both Javad and Ladan will live a happy, mutually-respectful life together.

Thank you for your consideration.

## State of Oklahoma Notary Acknowledgment

State of Oklahoma, County of Garfield.

This instrument was acknowledged before me on ___April 13, 2022___

by Abolfateh Marand.

Abolfateh Marand Signature

CARRIE MARTINEZ
NOTARY PUBLIC
#21007766
EXPIRATION DATE

# EXHIBIT 12 (Pg. 2/2)

[Type here]



$1,700 check,
issued by Defendant
Amir, to return
Plaintiff's money.

# EXHIBIT 13